642 So.2d 274 (1994)
Johnnie STEPHENS, Plaintiff-Appellee-Appellant,
v.
TOWN OF JONESBORO and State of Louisiana through Department of Transportation and Development, Defendants-Appellants.
Alberta DOYLE and George Stephens, Plaintiffs-Appellees-Appellants,
v.
TOWN OF JONESBORO, State of Louisiana through Department of Transportation and Development, et al., Defendants-Appellants.
Nos. 25715-CA, 25716-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1994.
Rehearing Denied September 15, 1994.
*277 Hudson, Potts & Bernstein by Robert M. Baldwin, Monroe, Richard Ieyoub, Atty. Gen. by Dorothy F. Jackson, Sp. Asst. Atty. Gen., Shreveport, for appellant.
Chris L. Bowman, Jonesboro, A.C. Dowden, Jr., Leesville, for appellee.
Before MARVIN, SEXTON and HIGHTOWER, JJ.
SEXTON, Judge.
This appeal involves two consolidated suits filed against the town of Jonesboro and the state of Louisiana by three plaintiffs who were involved in an auto accident. Plaintiff, Johnnie Stephens filed a suit for damages against the town of Jonesboro and the state of Louisiana in record number 25,715-CA and plaintiffs Alberta Doyle and George Stephens filed a suit for damages against the town of Jonesboro, the state of Louisiana, Johnnie Stephens and his insurer in record number 25,716-CA. We affirm in part and reverse in part.

FACTS
The suits in question arose as a result of an automobile accident which occurred on April 14, 1990, in the town of Jonesboro. Plaintiff Johnnie Stephens was the driver of the vehicle owned by him, with Alberta Doyle and George Stephens as guest passengers. The plaintiffs were traveling from Winnfield to Plain Dealing, Louisiana, on U.S. Highway 167. The parties entered the town of Jonesboro after turning onto La. Highway 4 and mistakenly drove past the correct turn for La. Highway 4. As a result, they continued in a westerly direction on Main Street, crossing Cooper Avenue (also La. Highway 4) rather than turning left in a southerly direction onto Cooper Avenue. This error in route led them to an undivided blacktopped street, Fifth Street, which dead ended. The parties proceeded past a dead end warning sign located on the side of the street about 250 feet from the end of the street and into a drainage canal which was located at the end of the street. All parties sustained injuries.
No barricade existed at the end of Fifth Street. Additionally, at the time of the accident, the state maintained a sign, just before the intersection of Cooper Avenue and Main Street which indicated that Ringgold, which was part of plaintiffs' journey, was straight ahead, in a westerly direction (down Main Street), when in fact, Ringgold was in a southerly direction and required a left turn.
Johnnie Stephens filed suit for damages alleging that the town of Jonesboro was negligent for failing to warn and/or in improperly warning that Main Street (Fifth Street) was not a through street and in failing to properly place warning signs or barricades at the end of and along Fifth Street. Stephens also filed suit against the state alleging negligence for failure to properly post Main Street leading plaintiff to believe that he was still on a main state thoroughfare, and that he was traveling in a westerly direction toward Ringgold when the accident occurred.
Plaintiffs Alberta Doyle and George Stephens filed a separate suit against the town of Jonesboro and the state of Louisiana asserting the same allegations of negligence as plaintiff, Johnnie Stephens, but also including a claim against Johnnie Stephens for negligent failure to keep a lookout, failing to see what he should have seen, and failing to maintain his vehicle under proper control.
The town of Jonesboro filed a cross-claim against the state of Louisiana for indemnification claiming that the state had assumed the responsibility for the proper placement of the signs in Jonesboro.
After a bench trial, the court found the state of Louisiana negligent in failing to maintain a sign which correctly announced the direction of Ringgold and which misled the public and resulted in Mr. Stephens traveling through the dead end street. The trial court found the town of Jonesboro negligent in failing to post the actual end of the dead end street. The court found Johnnie Stephens negligent in failing to keep a proper *278 lookout, for failing to stop before the street ended, and for failure to maintain control of his car.
The court allocated fault at 50 percent to Johnnie Stephens, 25 percent to the state of Louisiana, and 25 percent to the town of Jonesboro. The court awarded Johnnie Stephens $100,000.00 in general damages, $6,947.00 in past and future medical expenses, $297.15 in wrecker expenses, and $4,500.00 in property damage. The court awarded $300,000.00 to Alberta Doyle in general damages, $112,920.00 in past and future medical expenses, $64.20 in property damages, and $225.00 in special damages. Finally, George Stephens was awarded $50,000.00 in general damages, and $2,614.98 in past and future medical expenses.
The state of Louisiana, town of Jonesboro, and plaintiff Johnnie Stephens were each allocated one-third of the court costs.
The court denied the cross-claim of the town of Jonesboro against the state of Louisiana.
The town of Jonesboro has appealed and plaintiffs Johnnie Stephens, Alberta Doyle, and George Stephens, have answered the appeal.
The town of Jonesboro's threshold assignment is evidentiary. It contends that the trial court erred in not admitting evidence of the state's involvement in the placement of signs within the town of Jonesboro. They assert that the provisions of 23 U.S.C.A. 409, the provisions utilized to limit evidence of the state's contract with Jonesboro, are such that the oral contract between the two entities should have been admitted as well as testimony relating to it. They also assert that the state did not sufficiently object to the evidence of the state's relationship and therefore waived any objection based on 23 U.S.C.A. 409. Further, they assert that the trial court erred in not absolving the town of Jonesboro of liability and in denying its cross-claim against the state of Louisiana because the above evidence was erroneously precluded and showed that the state had assumed responsibility for the placement of the signs. Finally, Jonesboro asserts that the trial court assessed excessive damages.
Plaintiffs, in response to Jonesboro's arguments, agree that the trial court was in error in failing to admit evidence of the state's involvement in the placement of signs in the town of Jonesboro. Plaintiffs also assert that the town of Jonesboro was correctly found liable for the lack of warning devices at the end of the street. However, they argue that the town should have been found 60 percent at fault and the state found 40 percent at fault.
Plaintiffs assert that the trial court awarded inadequate damages, erred in assessing plaintiff Johnnie Stephens with 50 percent of the fault and one-third of the costs, and abused its discretion in the fixing of expert fees. Finally, Alberta Doyle contends that the trial court erred in failing to award all past and future medical expenses.
The state of Louisiana argues that pursuant to the provisions of 23 U.S.C.A. 409, the trial court correctly found that any evidence of the state's activities as it related to the signing of the road in question was inadmissible. They also assert, contrary to the town of Jonesboro's argument, that the state made a timely objection to the evidence in question, which the court considered as a general objection covering any evidence relating to this issue. Because the trial court ruling correctly disallowed this evidence, the state argues that there was no evidence supporting the town of Jonesboro's contentions that the state assumed responsibility for the street signs and therefore its cross-claim was correctly denied. As to the issues of fault and excessive damages, the state adopts the arguments of the town of Jonesboro.

EVIDENTIARY ISSUE/23 U.S.C.A. 409
In 1975 a study was conducted by the Federal Highway Administration through the Highway Safety Commission and the Louisiana Department of Transportation and Development which provided for the placement and replacement of road signs throughout 31 cities of Louisiana. The study was a highway improvement project conducted under the provisions of 23 U.S.C.A. 402. After the initial survey was completed, the state of Louisiana undertook the actual installation of the signs throughout the various cities and *279 was reimbursed by the federal government. Jonesboro participated in this project.
The town of Jonesboro argues that the trial court erred in excluding evidence regarding the state's involvement in the placement of signs in the town of Jonesboro. Specifically the trial court excluded a plat, a survey indicating the appropriate placement of signs, and a contract between the town of Jonesboro and the state of Louisiana. Additionally, the court refused to allow testimony from any witness regarding the extent of the state's activities in the placement of the signs. The town of Jonesboro's argument is two-fold. They acknowledge that although the plat and survey "may not be admissible" under the provisions of 23 U.S.C.A. 409, nevertheless, they argue that the contract between the state and the town of Jonesboro and testimony relating to the activities of the state are admissible. They alternatively contend that even if this evidence is inadmissible, that the state waived any objection to the admission of the evidence through its failure to timely object at the time of admission of each piece of evidence or testimony.
Specifically, 23 U.S.C.A. 409 reads as follows:
§ 409. Discovery and admission as evidence of certain reports and surveys
Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

(Emphasis ours.)
The town of Jonesboro does not contest the applicability of 23 U.S.C.A. 409 to the subject road signing project. Nor does the town of Jonesboro contest the exclusion of the survey and plat. Clearly, these documents fall squarely within the exclusion of Sec. 409 and qualify as "surveys, schedules, lists, or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites ... or for the purpose of developing any highway safety construction improvement project...." Wiedeman v. Dixie Electric, 627 So.2d 170 (La.1993).
Thus, our analysis is limited to whether the aforesaid statute excludes from evidence the contract between the state and the town of Jonesboro and testimony relating to the activities of the state of Louisiana pursuant to that agreement.
The plain language 23 U.S.C.A. 409 excludes from evidence all data compiled for purposes of highway and railroad crossing safety enhancement and construction for which a state received federal funding. The underlying intent of the statute is to "facilitate candor in administrative evaluations of highway safety hazards," Robertson v. Union Pacific Railroad Company, 954 F.2d 1433 (8th Cir.1992); Duncan v. Union Pacific Railroad Company, 790 P.2d 595 (Utah Ct. App.1990), and to prohibit federally required record-keeping from being used as a tool in private litigation. Robertson, supra.
We first find that the contract entered into between the state of Louisiana and Jonesboro clearly involved information relating to a highway safety construction improvement and is the type of information clearly encompassed within the provisions of 23 U.S.C.A. 409.
We next address the testimony relating to the highway safety construction improvement project. The case of Martinolich v. Southern Pacific Transportation Co., 532 So.2d 435 (La.App. 1 Cir.1988), writ denied, 535 So.2d 745 (La.1989), cert. denied, 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1027 (1989), is persuasive in our determination. Martinolich involved a collision between a train and a sugar cane truck. The accident occurred on a state highway. During a deposition, an undersecretary for DOTD was asked, "Who makes the decision as to whether *280 or not safety devices or additional safety devices, such as lights and the like, are needed at a particular crossing?" Counsel for DOTD objected, citing 23 U.S.C.A. 409, and the deposition was terminated. A motion to compel was filed, and the trial court excluded the evidence finding that "23 U.S.C. Section 409 creates a privilege as to all information collected pursuant to the federal programs covered by this statute." Martinolich, supra at 437.
The First Circuit Court of Appeal granted writs of review to examine the issue. The court noted that the trial court was incorrect in its conclusion that 23 U.S.C.A. 409 creates a privilege to "all information gathered," but rather "reports, surveys, schedules, lists, or data compiled...." Martinolich, supra at 437. The court further noted, however, that this enumeration suggested more than simple factual information. The court also noted that the documents held by DOTD may reflect mental impressions, conclusions, and opinions of DOTD representatives regarding the surveys. The court likened this type of evidence to documentary evidence assembled by expert witnesses, which is not admissible. Further, the court noted that the phrase in the statute, "considered for other purposes," implied a determination by a finder of fact. Therefore, not only could the finder of fact not consider the prohibited item, the finder of fact could not consider testimony as to its contents. Thus, the court held that the testimony of the DOTD representative was correctly excluded under the provisions of 23 U.S.C.A. 409. (See also Sawyer v. Illinois Central Gulf Railroad, 606 So.2d 1069 (Miss.1992), in which the Mississippi court held that 23 U.S.C.A. 409 prohibited testimony relevant to the contents of documents which were privileged under the statute, and Miller v. Bailey, 621 So.2d 1174 (La.App. 3d Cir.1993), writ denied, 629 So.2d 358 (La.1993), in which the court held that a letter by a state trooper to the DOTD in which he notified it of a need for a "NO PARKING" sign at the site of a later accident, as well as any testimony relating to the letter was held inadmissible pursuant to 23 U.S.C.A. 409, even though the trial judge did not determine that the highway in question was federally funded.)
We find that facts of this case, as they relate to the testimony sought to be included, closely akin to those in Martinolich, supra. The testimony sought to be elicited in this case was based upon the compiled data falling within the provisions of 23 U.S.C.A. 409. Clearly, in this case, any questions pertaining to the activities of the state in the placement of the signs or opinions regarding responsibility for the placement of the signs sought mental impressions or opinions directly related to the survey or plat. That testimony, if allowed into evidence, would undermine the intent of 23 U.S.C.A. 409. To exclude the actual compilations while allowing testimony regarding those compilations and their results would in effect allow the compilations into evidence contrary to the intent of 23 U.S.C.A. 409. Consequently, we see no difference between the survey or plat and testimony revealing the mental impressions or opinions relating to it. Therefore, we conclude that the trial court did not err in excluding the plat, survey, and the contract, or testimony relating to these items.

WAIVER OF OBJECTION
Having determined that the trial court correctly excluded this evidence, we now address the town of Jonesboro's argument that the state waived its objection to the admission of the evidence by failing to timely object.
An objection to a question to a witness or to the introduction of evidence is waived if the objection is not raised at a time when the error can be corrected. Airline Construction Company Inc. v. Ascension Parish School Board, 568 So.2d 1029 (La. 1990). To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection. LaHaye v. Allstate Insurance Co., 570 So.2d 460 (La. App. 3d Cir.1990), writ denied, 575 So.2d 391 (La.1991).
The record reflects that the state of Louisiana objected to the admissibility of evidence pursuant to the provisions of 23 U.S.C.A. 409 during the initial phase of the *281 introduction of exhibits. At that time, the court ruled that the survey and testimony relating to it was inadmissible. Further, during the testimony of Don Tolar, an engineering expert called by plaintiffs as an adverse witness, the state again objected that testimony relating to the project violated 23 U.S.C.A. 409. The trial court allowed the testimony for the limited purpose of determining whether or not federal funds were utilized.
During the testimony of Mayor Zuber, the state again objected to testimony relating to the duties of the state in the sign placement. At that time the judge stated that he would allow the testimony subject to the objection of the state for the purpose of determining whether or not federal funds were utilized in the project. Finally, prior to beginning cross-examination of Mayor Zuber by the state, counsel for the state once again noted for the record her position that in cross-examining the mayor on the issue of whether federal funds were used in the project, the state did not forfeit the right to object to the survey and study. The court noted the objection and indicated that the court considered that the state's objection had been made general as to the entire record.
We find that based upon the record before us there is ample objection made by the state relating to the exclusion of evidence pursuant to 23 U.S.C.A. 409. Initially, the state filed a motion in limine on this issue which resulted in the contract being excluded from evidence. This is sufficient to reserve the issue for appeal. Lafleur v. John Deere Co., 491 So.2d 624 (La.1986). Additionally, the record is replete with objections by the state based upon the provisions of 23 U.S.C.A. 409. At the times of objection, however, the trial court, while acknowledging the objections, nevertheless overruled them while attempting to establish the use of federal funds for the project. We therefore find that the state of Louisiana sufficiently reserved its objections for appeal based upon the provisions of 23 U.S.C.A. 409.[1]

INDEMNIFICATION
Because we find that the trial court was correct in excluding Jonesboro's evidence relating to the signing project, the record does not support Jonesboro's claim for indemnification. Accordingly, the trial court correctly denied the claim for indemnification.

COMPARATIVE NEGLIGENCE
Johnnie Stephens asserts that the trial court erred in allocating his fault at 50 percent. We agree.
Determination and apportionment of fault in negligence cases are factual matters, and the trial court findings will not be disturbed by the reviewing court unless they are erroneous. Keeth v. Department of Public Safety and Transportation, 618 So.2d 1154 (La.App. 2d Cir.1993). Appellate courts will not disturb findings of respective percentages of fault unless they are determined to be clearly wrong or manifestly erroneous. LSA-C.C. Art. 2323; Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App. 2d Cir.1992). In apportioning comparative fault, this court has applied the factors enumerated by our supreme court in Watson v. State Farm and Casualty Insurance Company, 469 So.2d 967 (La.1985):
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger;
(2) how great a risk was created by the conduct;
(3) the significance of what was sought by the conduct;
(4) the capacities of the actor, whether superior or inferior; and,
(5) any extenuating circumstances which might require the actor to proceed in haste without proper thought.
In this case, the evidence is clear that Mr. Stephens was traveling on an unfamiliar road before dawn under dark, misty conditions. *282 Both George and Johnnie Stephens indicated that they were conversing at the time of the accident. Johnnie Stephens had his glasses on at the time of the accident in accordance with his license restriction requiring glasses. He indicated that he had never driven in Jonesboro before. He remembered proceeding past a red light, but did not see a dead end sign.
Officer Pagget, who arrived at the scene after the accident, testified that he had received information that it had been raining on and off through the night. He testified that Mr. Stephens indicated that he had been traveling between 30 and 40 mph at the time of the accident. He further noted that there was a street light in the vicinity, but was unsure whether or not it illuminated the accident site.
Don Tolar, the district traffic operations engineer for Louisiana Department of Highways, noted that the placement of a dead end sign is based upon judgment. He testified that the dead end sign was approximately 310 feet from the intersection of Cooper Avenue and Main Street and that in daylight it was visible from the intersection. He had no knowledge of night visibility. He testified that the dead end sign did not indicate where the road would end however. He noted that it was difficult to tell where the road ended. Tolar indicated that he felt that the dead end sign should have been placed closer to Cooper Avenue, as was originally the case, as opposed to further down Fifth Street. In his opinion, this would have prevented motorists from ever entering the dead end street. He did state that he felt that the sign as it existed was adequate to warn motorists of the impending dead end, but not the condition at the end of the street, however.
Olin Dart, an expert in the field of traffic engineering, highway design, traffic safety and accident reconstruction, testified that in his opinion the dead end sign should have been placed near the Cooper Avenue and Main Street intersection. This would place a motorist on notice early on that the street ended. He further indicated that warning barriers or some other sort of warning device should have been placed at the actual end of the road. He estimated that the shortest distance that an individual could see the end of the street was approximately 50 feet. He estimated that based upon a 15 m.p.h. speed, a 70-year-old man, and a reaction time of 2.5 seconds that it was inevitable that Mr. Stephens would experience this accident. Thus, a normal person of Mr. Stephen's age would not have had time to avoid the accident or take any action to avoid it with the signing as it existed. He testified that even if Mr. Stephens had seen the sign, that it was more probable than not that the accident would have occurred anyway.
Anthony Galli, an expert in photo analysis and physics as they relate to accident reconstruction and photography, calculated the speed of Mr. Stephens at somewhere between 15 and 20 mph. He estimated that a vehicle travels 22 feet per second traveling at 15 mph. He estimated that the ditch could be seen 50 feet from the road. Based upon Dr. Dart's calculation that reaction time was 2.5 seconds, he indicated that it would be impossible for a person 70 years of age to react in time to miss the ditch. He testified that the situation created a "trap" for the unwary driver and that the instant light and weather conditions created an even greater risk. Upon cross-examination, Dr. Galli noted that one would notice the end of the road approximately 80 feet prior to getting to it. However, he testified that under the conditions of the accident, the transition would not be very clear. The texture of the road and the grass would, in his opinion, not appear to be very different. Dr. Galli disagreed that Mr. Stephens was traveling at a greater speed than 20 mph in light of the damage done to the vehicle.
The responsible governing authority which has jurisdiction over the highway, road, street or thoroughfare has the legal duty to erect warning signs or barricades sufficient to warn motorists of any unusual obstructions, perilous condition or defect in the road face that would entail danger to the physical safety of those proceeding over such routes. Hutson v. Madison Parish Police Jury, 496 So.2d 360 (La.App. 2d Cir.1986), writ not considered, 498 So.2d 749 (La.1986), reconsideration denied, 498 So.2d 758 (La. 1986); McCoy v. Franklin Parish Police *283 Jury, 414 So.2d 1369 (La.App. 2d Cir.1982); Callahan v. Town of Bunkie, 287 So.2d 629 (La.App. 3d Cir.1974), writ not considered, 290 So.2d 905 (La.1974). Further, motorists are not required to anticipate that a roadway on which they are traveling will suddenly end in an unmarked ditch or body of water. LeJeune v. State, Department of Highways, 215 So.2d 150 (La.App. 3d Cir.1968); Pierrotti v. Louisiana Department of Highways, 146 So.2d 455 (La.App. 3d Cir.1962).
In this case, plaintiffs were traveling on an unfamiliar roadway. The weather conditions were less than desirable and it was dark. The only warning available to them was a dead end marker placed approximately 250 feet before the actual end of the road. No other indications were provided for the driver of a vehicle on the date of the accident. Without any further warning or barrier the road ended causing plaintiffs to fall into the unmarked ditch.
We find two cases similar and persuasive in our determination of the comparative fault of Johnnie Stephens. The first is LeJeune v. State Department of Highways, supra, which involved a wrongful death suit filed by motorist's widow against the Department of Highways of Louisiana. The accident occurred when the decedent, proceeding westward on a state highway, skidded into a deep ditch at a point where the highway ended. The headlights of this driver, approaching the intersection at midnight, did not pick out any object to alert him of the sudden termination of the roadway. There were no stop signs or barricades to warn traffic of the hazard. The only sign within the immediate vicinity of the intersection was a traffic sign marked "END ROAD REPAIRS." This sign was placed 200 feet east of the intersection. The sign did not warn motorists of the sudden termination of the highway. The trial court and court of appeal found no negligence on the part of decedent even though some seven miles east of the intersection there was a "ROAD CLOSED TO THROUGH TRAFFIC" sign.
In McCoy v. Franklin Parish Police Jury, supra, this court addressed an instance where plaintiff encountered an unmarked "T" intersection, skidding across the road into a ditch and suffering injuries. The plaintiff was unfamiliar with the thoroughfare, but was aware that she needed to turn right at some point. Plaintiff knew that the road was going to end but did not know where. She was proceeding at approximately 15 to 25 miles per hour on a dark, foggy night. Given these facts, the court held the trial court in error in its finding that plaintiff was contributorily negligent. The court determined that her conduct fell within that of a reasonably prudent person faced with similar conditions and circumstances.
Our case is similar in nature to both cases cites above. Plaintiff had proceeded on an unfamiliar roadway in the dark under misty weather conditions. There was only one warning sign on the side of the road approximately 250 feet before the actual end of the road. This sign, however, failed to warn of the abrupt end to the road or the existence of the ditch. We observe that photographs introduced into evidence are very instructive in demonstrating the scene as it was observed by Mr. Stephens. The scene depicts a trap-like hazard. There is only a narrow grassy area between the end of the road and the ditch. The ditch is barely visible even in the daytime photographs. Further, although the grassy area is seen in the daylight reproduction, expert testimony indicated that there would be little distinction between the end of the highway and the grassy area during the night hours and during inclement weather conditions.
The uncontroverted expert testimony further reveals that because of the lack of barricades or warning signs, or both, this accident would have occurred irrespective of whether plaintiff had seen the dead end sign. The circumstances, including the weather, time of night, age, and unfamiliarity of plaintiff with the area, combined with the trap-like hazard clearly demonstrate that plaintiff acted as a reasonable and prudent driver under these conditions. Once Mr. Stephens was on this wrong road under these circumstances, a high probability of an accident at the end of this road existed.
There were other factors that can be said to have led Mr. Stephens to being on the wrong road. We therefore next address the *284 liability of the state of Louisiana and Mr. Stephens as it relates to La. Highway 4 and the destination and route marker signs. The liability of the state of Louisiana and the town of Jonesboro constitutes separate acts of negligence under these facts. The actions of the town of Jonesboro relate to its ownership, custody and control of the dead end street. The liability of the state of Louisiana stems from its ownership, custody and control of La. Highway 167 and La. Highway 4. The expert testimony as it relates to the condition of the signs on these state highways reveals that indeed the destination signs directing a motorist to Ringgold were misleading. Donald Tolar, expert engineer, opined that an additional destination sign was needed on the highway indicating that a left turn was necessary. Further, Dr. Olin Dart testified that an additional sign was needed. Richard Robertson, expert engineer for the state of Louisiana, testified that the destination signs were in compliance with the Manual of Uniform Traffic Control Devices. He did admit that the placement of the additional sign would have been less confusing to the driver. Under these facts, we cannot find that the trial court erred in finding the state of Louisiana negligent for the placement of these signs. Expert testimony clearly revealed that the signs were misleading to motorists. We further conclude the trial court was not clearly wrong in its determination that Mr. Stephens was at fault, as well, in failing to be attentive to the route markers. Clearly, had Mr. Stephens been more attentive in reading the road signs, he would have seen that Highway 4 required a left turn.
In modifying a trial court's allocation of fault, we apply the principle that we decrease fault to the highest percentage or increase fault to the lowest percentage of fault we would affirm, as the case may be. Starnes v. Caddo Parish School Board, supra. After review of all of the evidence, we decrease Mr. Stephens' allocation of fault to 15 percent, the highest percentage of fault we would affirm against a plaintiff in his position, and increase the town of Jonesboro's allocation of fault to 60 percent, the lowest percentage of fault we would affirm against a defendant in its position. The remaining 25 percent allocation of fault against the state of Louisiana is affirmed.

DAMAGES
The town of Jonesboro and the state of Louisiana assert that the trial court awarded excessive general damages to all plaintiffs in this case. Plaintiffs, Alberta Doyle, Johnnie Stephens, and George Stephens, argue that the trial court awarded inadequate general damages and specifically erred in awarding inadequate past and future medical expenses to Alberta Doyle.
Before a trial court award for damages can be questioned as inadequate or excessive, the reviewing court must look first not to prior awards, but to the individual circumstances of the instant case. A damage award should not be disturbed by the reviewing court absent a showing of clear abuse of discretion vested in the trial court. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Reck v. Stevens, 373 So.2d 498 (La.1979); Jackson v. A.L. & W. Moore, 609 So.2d 1064 (La.App. 2d Cir.1992). The award is then "disturbed" only to the extent of lowering it (or raising it) to the highest (or lowest) point, as the case may be, within the reasonable discretion or range afforded by a trial court. Foster v. Lafayette Insurance Co., 504 So.2d 82 (La.App. 2d Cir.1987), writs denied, 505 So.2d 61, 65 (La.1986).
The trial court awarded Johnnie Stephens $100,000 in general damages, Alberta Doyle, $300,000 in general damages, and George Stephens, $50,000 in general damages. The court also awarded Alberta Doyle the sum of $112,920 in past and future medical expenses.
The evidence reveals that George Stephens, a passenger in the vehicle, received a moderately severe whiplash and was hospitalized for five days. The whiplash aggravated a pre-existing arthritic condition. He also experienced elevated blood pressure upon admission to the hospital. He additionally experienced mouth difficulty which included the loss of teeth and temporomandibular *285 joint (TMJ) pain. He underwent surgery to have the teeth removed and dentures were prescribed. He testified that he was forced to eat soft food for a three-month period due to the work on his mouth. He has adjusted well to the dentures, and has recovered a 50 percent range of motion in his neck. He had experienced a decreased range of motion in his neck prior to the accident. He testified that he has been forced to resign from his ministering duties since the time of the accident and that he is unable to get around as well as he once did. He was 87 years old at the time of the trial.
When we consider the seriousness of the injuries against the amount awarded by the trial court, we cannot say that the $50,000 award is too high, as defendants contend, or too low, as plaintiff contends, so as to constitute an abuse of the discretion afforded to the trial court.
Johnnie Stephens received a fracture of the left knee joint which caused severe pain. He also suffered a whiplash, a nasal contusion, a laceration of the left eyebrow, and a fractured left rib. He was forced to utilize a walker during his recovery period. He has experienced a 20 percent impairment to the lower extremity as a result of the fracture and has a 20 percent chance of developing arthritic changes as a result of this injury. This equates to an eight percent total body impairment. There exists a future possibility that he will need a total knee joint replacement.
Alberta Doyle received the most serious injuries of the three. She received a Colles fracture of the right wrist which resulted in a 30 percent impairment. She also experienced a broken left leg just below the knee. The leg injury was coupled with a large open laceration that extended down the front of her lower leg several inches. She required surgery for the broken wrist and for the insertion of pins, plates and screws in her leg. She could not place any weight on the leg for a period of three months and found it difficult to use crutches or a walker because of her arm. She experiences a 50 percent permanent impairment in the leg and will probably need a knee replacement in the near future. She will be forced to take pain medication until the knee replacement. She also experiences a 30 percent permanent impairment to her wrist. The accident also caused de-gloving of her eyelid approximately half-way to her scalp which required a surgical re-attaching. She experienced and will experience a significant amount of pain as the result of this injury and has had a "drooping" of the eyelid since that time. She further had developed TMJ, and complications with diabetes which were not present before the accident.
Likewise, when we consider the seriousness of the injuries sustained by Johnnie Stephens and Alberta Doyle, we cannot say that the amounts awarded by the trial court, $100,000 and $300,000, respectively, are so high or low so as to constitute an abuse of discretion.
Plaintiff Alberta Doyle also complains that the trial court erred in its award of past and future medical damages. Specifically, she asserts that the trial court awarded the inadequate amount of $112,920.00 rather than 126,264.21. She states that the evidence demonstrated an amount of $69,739.57 past medical expenses and the amount of $56,524.64 future medical expenses.
Medical expenses, past and future, which are incurred by an injured plaintiff are recoverable as an element of damages. Thames v. Zerangue, 411 So.2d 17 (La.1982); Beckham v. St. Paul Fire & Marine Insurance Company, 614 So.2d 760 (La.App. 2d Cir.1993); Nichols v. Stone Container Corp., 552 So.2d 688 (La.App. 2d Cir.1989), writ denied, 556 So.2d 1262 (La.1990).
In this case, Dr. Finley, an expert in the field of orthopedic surgery, testified that it was more probable than not that Ms. Doyle would require a knee replacement in the near future. Dr. Gary Luffey, an expert in the field of ophthalmology, testified that surgery will be required to attempt to correct Ms. Doyle's drooping eyelid. Dr. Dwight Anderson, an expert in the field of economics and finance, valued the cost of these two procedures, along with estimated doctor visits and medication, at a total of $56,524.64. There was no contradictory testimony presented *286 at trial. Clearly, the trial court awarded a sufficient amount to cover past medical expenses. However, the court failed to award amounts which will be necessary for Ms. Doyle's future surgeries. Because we find that these amounts have been proven with legal certainty, we find the trial court clearly wrong in failing to award the total sum of $126,264.21 in past and future medical expenses.

COSTS
Plaintiff, Johnnie Stephens, asserts that the trial court erred in assessing costs equally between himself, Jonesboro, and the state of Louisiana.
The trial court has broad discretion in the assessment of costs, and may render judgment for costs against any party as it may consider equitable. Earles v. Ahlstedt, 591 So.2d 741 (La.App. 1st Cir.1991). On review, the trial court's assessment of cost can be reversed only upon a showing of abuse of discretion. State ex rel. Guste v. Nicholls College Foundation, 592 So.2d 419 (La.App. 1st Cir.1991), writ denied, 593 So.2d 651 (La.1992).
In this case, all these parties were found to be at fault in the cause of this accident both at the trial level and upon appeal. Accordingly, it was clearly within the broad discretion of the trial court to equally assess costs between all parties. We find no abuse of discretion in this assessment of costs.

EXPERT WITNESS FEES
Finally, plaintiffs finally assert that the trial court abused its discretion in failing to award expert witness fees according to the testimony of each witness relevant to the cost of his services.
Under LSA-R.S. 13:3666 and C.C.P. Art. 1920, the trial judge has great discretion in awarding costs and expert fees. Murphy v. Boeing Petroleum Services, 600 So.2d 823 (La.App. 3d Cir.1992); Larkins v. Cage Contractors, Inc., 580 So.2d 1068 (La. App. 4th Cir.1991). Reviewing courts will not retract awards unless the record on appeal reveals a serious abuse of discretion. Antis v. Miller, 613 So.2d 1034 (La.App. 3d Cir.1993). The trial judge is not required to set an expert fee at the amount charged by the expert witness. Murphy, supra; Fogg v. Lott, 444 So.2d 177 (La.App. 1st Cir.1983).
In this case, the trial judge utilized his broad discretion in his award of expert fees. Considering the amounts awarded, we find no abuse of that broad discretion.

SUMMARY
In summary, we will amend the trial court judgment to award Alberta Doyle the amount of $126,264.21 in past and future medical expenses. Further, we amend the trial court judgment to allocate the fault of plaintiff, Johnnie Stephens, at 15 percent and the town of Jonesboro at 60 percent. All damage awards will be adjusted by these percentages. In all other respects, the judgment of the trial court is affirmed.

DECREE
Paragraph two of the trial court judgment in favor of plaintiff, ALBERTA DOYLE, dated April 13, 1993, is hereby amended as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Alberta Doyle, and against the defendants, Town of Jonesboro and State of Louisiana, for the full and true sum of FOUR HUNDRED TWENTY-SIX THOUSAND FIVE HUNDRED FIFTY THREE AND 41/100 DOLLARS ($426,553.41) (rather than $413,209.20), together with legal interest from the date of judicial demand until paid.
Paragraphs four and five of the trial court judgment are amended to read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the above amounts are reduced by fifteen percent (15%), being the comparative negligence assessed to Johnnie Stephens.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the remaining judgment amount shall be shared between the town of Jonesboro and the state of Louisiana, with the town of Jonesboro to pay *287 sixty percent (60%) of the judgment amount, and the state of Louisiana to pay twenty-five percent (25%) of the judgment amount.
JUDGMENT AMENDED AND AS AMENDED, AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, HIGHTOWER, VICTORY and STEWART, JJ.
Rehearing denied.
NOTES
[1] We also note that the depositions of Winfred Peel (Jonesboro's public works director) and George Huckaby (Jonesboro's superintendent of the street and sanitation department) fail to include any evidence relating to the signing project except a question relating to each individual's knowledge of the 1975 survey. Therefore, any objection by the state was unnecessary and cannot be said to amount to a waiver.