LSEXTON, Judge.
This is a wrongful death action filed by the wife and son of Art Reichert for fatal injuries received by decedent in a ear accident. Defendants, state of Louisiana and A.L. Williams, were found to be at differing degrees of fault by the judge and jury. Corresponding damages were awarded. We affirm in part and reverse in part.
FACTS
This case arises as the result of an automobile accident which occurred on Highway 33 in Lincoln Parish, Louisiana. Light rain was falling on July 21, 1992, the date of the accident. Art Reichert was traveling south on Louisiana Highway 33 in Lincoln Parish while A.L. Williams was in a vehicle traveling north on this same highway. He was towing a flatbed trailer. Ronnie Martin was driving a Ford truck in front of Williams and stopped to make a left turn onto Louisiana Highway 821 to go in a westerly direction. Williams apparently failed to timely see Martin’s vehicle and attempted to make an emergency stop by slamming on his brakes. As a result, Williams was unable to maintain control of his vehicle which proceeded into the southbound lane of Highway 33, striking Reichert’s vehicle. Upon impact, Williams’ vehicle was turned around into the southbound lane, the direction in which Reichert was traveling. As the Williams’ vehicle spun around, the attached trailer struck the rear of Martin’s vehicle. Reichert died as a result of injuries received in the accident.
Louisiana Highway 33, a paved two-lane road, curves north-northeast as one travels north to the intersection of Highways 33 and 821. Highway 821, also paved and two-lane, proceeds in an east-west direction. The two roads intersect about six miles north of Ru-sten, Louisiana, at the location of this accident. Highway 33 curves to the left after its intersection with Highway 821. Prior to reaching the intersection, traveling north on Highway 33, a hill crest is located approximately 600 feet prior to the intersection which drops to the intersection as one travels in a northerly direction. Two stop signs are located on both the east and west extensions of Highway 821 at the intersection. There is a paved shoulder area measuring approximately thirteen feet in width for motorists turning to the right from northbound La. 33 onto eastbound La. 821. The lane of travel is ^approximately twelve feet wide. There are no caution lights informing motorists of the impending intersection nor does there exist a turn lane. Both a crossroad caution sign and junction sign warn of the intersection and are placed approximately 1000 and 800 feet, respectively, prior to the intersection.
Reichert’s widow, Martha Reichert, and Reichert’s son, Thomas Reichert, filed suit for wrongful death against Williams; Martin; the state of Louisiana; Williams’ employer and its insurer; Williams’ liability insurer, State Farm; and Reichert’s uninsured insurer, also State Farm; Herman Manuel, the owner of the trailer attached to Williams’ truck; and Manuel’s insurer.
A trial by jury resulted in a verdict relieving Reichert from any liability. The jury assessed 50 percent fault to Williams and 50 percent fault to the state of Louisiana. The jury awarded the sums of $200,000 for loss of love and affection and $125,000 for loss of services and support, in addition to $7000 medical and funeral expenses to Martha Reichert. Additionally, the jury awarded the sum of $35,000 for loss of love and affection to Thomas Reichert.
In a subsequent written opinion, the trial judge found the state of Louisiana 100 percent at fault in causing the accident and signed a single judgment reflecting the jury’s assessment of damages, but reflecting both the jury’s and his assessment of fault. De *50 fendants Williams and the state of Louisiana appeal.
Plaintiffs have answered the appeal, seeking an increase to the award to Mrs. Reichert for loss of services and support. They also contend the trial judge erred in failing to grant a JNOV to resolve the varying degrees of fault assessed by the trial judge and the jury.
The state of Louisiana argues that the trial court erred in failing to exclude from evidence certain “self-critical evaluations” made by the state pertaining to the highway in question pursuant to the provisions of 23 U.S.C.A. § 409, which excludes certain evaluations from evidence in state tort suit cases. The state further argues that trial court erred in failing to follow the language of LSA-R.S. 32:235(E), which provides that _[3evidence which indicates that traffic warning devices are in compliance with applicable design standards presents prima facie proof of adequacy. The state also argues that the trial court erred in allowing into evidence information regarding reports of other accidents for the purpose of showing that the state was put on notice of defects in the highway. Next, the state argues that there has been no showing on the part of plaintiffs that it breached any duty owed to plaintiffs or that the damages received by plaintiffs were caused by the negligence of the state. Finally, the state argues that the trial judge erred in applying the “sudden emergency doctrine” to the conduct of Williams in light of the fact that Williams’ conduct created the sudden emergency.
Williams argues that the jury erred in failing to apply the “sudden emergency doctrine” to the facts of this case, specifically relating to the actions of Williams and, secondly, that the jury erred in its allocation of fault between the state and Williams.
Mrs. Reichert assigns as error the award of damages to her for loss of support and service, asserting that they are inadequate to fully compensate her for the damage sustained. Further, Reichert challenges the denial of her Motion for Judgment Notwithstanding the Verdict.
APPLICATION OF 23 U.S.C.A. § 409
We first address the contentions of the state as they relate to the admissibility or exclusion of certain evidence pursuant to the provisions of 23 U.S.C.A. § 409. That provision reads as follows:
Notwithstanding any other provisions of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such report, surveys, schedules, lists, or data.
_||At trial the state of Louisiana filed a pretrial motion in limine seeking to have the evidence excluded. The court denied the motion and the evidence discussed below was introduced at trial.
Although the state does not specify which evidence it claims should have been excluded, it appears that plaintiffs’ Exhibits 28 to 37 are those to which issue is taken. Plaintiffs’ Exhibits 28, 30, 31, 32, 34, and 35 are various letters requesting feasibility studies by two state representatives and responses to those requests by various Department of Transportation employees. Plaintiffs’ Exhibit 36 is a letter directed to a state representative in response to his request for the installation of a flashing beacon at the intersection which contains reference to the results of a study done by the department of transportation. Plaintiffs’ Exhibits 33 and 29 are responses to the above-noted requests. They include reports and studies done by the Department of Transportation relating to this intersection with correspondence transmitting these reports and explaining the action or inaction of the state.
At the time of the introduction of plaintiffs’ Exhibits 28, 30, 31, 32, 34, 35, and 36, the *51 letters, counsel for the state objected to admissibility based upon hearsay. The trial judge overruled the objection finding that the letters were not being admitted to prove the truth of their contents, but only for the fact of their existence. The state also objected to the admissibility of these letters and Exhibits 38 and 29 based upon the provisions of 23 U.S.C.A. § 409. On appeal, the state argues error in the admission of all of this evidence based upon the provisions of 23 U.S.C.A. § 409 only.
We do not find that Exhibits 28, 30, 31, 32, 34, and 35 (the letters) are the type of evidence sought to be excluded by 23 U.S.C.A. § 409.
The Louisiana Supreme Court has recently addressed the application of 23 U.S.C.A. § 409 in Wiedeman v. Dixie Electric Membership Corporation, 627 So.2d 170 (La. 1993), cert. denied, — U.S.-, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994). There the court held that any accident reports, traffic counts, and other raw data collected by the department were admissible, but that “other compilations made for developing highway Igsafety construction projects which would utilize federal aid funds (§ 409)” were not admissible. Compilations, the court said, “indicate that information is collected into one document or composed from other sources.... The term suggests an end product, something more than unedited factual material.” Wiedeman, supra at 173. (emphasis ours) The letters in question are merely requests that studies be done for a determination of whether or not corrective measures were needed at this intersection. These do not qualify as a “compilation” or “end product” as discussed by the court in Wiedeman. We therefore find no error in the admission of these documents.
The same cannot be said as it relates to Exhibits 29, 33, 36 & 37. The exclusion of evidence contemplated by 23 U.S.C.A. § 409 includes more than simple factual information. It also includes documents held by the Department of Transportation that may reflect mental impressions, conclusions, and opinions of DOTD representatives regarding the survey results. These documents are therefore not admissible. Marti-nolich v. Southern Pacific Transportation Co., 532 So.2d 435 (La.App. 1st Cir.1988), writ denied, 535 So.2d 745 (La.1989), cert. denied, 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1027 (1989); Stephens v. Town of Jonesboro, 25,715 and 25,716 (La.App.2d Cir. 08/19/94) 642 So.2d 274.
We are unpersuaded by Williams’ and the Reicherts’ argument that because these reports were prepared as a result of citizens’ complaints they do not fall within the provisions of 23 U.S.C.A. § 409 as “being for the purpose of preparing a highway improvement project” under those federal provisions. The case of Harrison v. Burlington Northern Railroad Co., 965 F.2d 155 (7th Cir. 1992), a personal injury action, in which plaintiff, a passenger in a vehicle, was struck by a train, is persuasive in the resolution of this argument. There, the court excluded evidence of the Illinois Commerce Commission’s investigative report and recommendations regarding the highway road crossing. Plaintiff did not contest that the documents constituted data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of railway-highway crossings, but denied that the road in question was eligible for implementation of improvements | fiutilizing highway funds. The appellate court disagreed, conceding that the highway did not fall within the federal aid system under Title 23. Nevertheless, the court found that the road may nonetheless qualify for federal aid for the purposes of safety enhancement. The court reasoned that the road was a “ ‘highway’ according to 23 U.S.C.A. § 101(a) which defines ‘highways’ as including ‘roads, streets, and parkways....’” Harrison, supra at 159. Further, the court found the highway to qualify as a “public road” as defined by 23 U.S.C.A. § 101(a) which means “any road or street under the jurisdiction of and maintained by a public authority and open to public travel.”
The same reasoning applies here. We have determined that Exhibits 29, 33, 36 and 37 are “compilations” encompassed within the exclusion of 23 U.S.C.A. § 409. The fact that these studies were conducted pursuant to citizen’s complaints in no wise affects the applicability of these provisions to this evi *52 dence. As noted by the court in Harrison, clearly both Highways 33 and 821 qualify as a “road, street or parkway” under 23 U.S.C.A. § 101(a). Additionally, these highways qualify as public roads which are maintained by the state of Louisiana. As such, the provisions of 23 U.S.C.A. § 152 provide that each state “shall conduct and systematically maintain an engineering survey of all public roads to identify hazardous locations, sections, and elements, including roadside obstacles and unmarked or poorly marked roads, which may constitute a danger to motorists and pedestrians, assign priorities for the correction of such locations, sections, and elements, and establish and implement a schedule of projects for their improvement.” (Emphasis ours.)
The remaining provisions of 23 U.S.C.A. § 152 provide for federal funding of 90 percent of such improvements. 23 U.S.C.A. § 409 specifically refers to information compiled pursuant to section 23 U.S.C.A. § 152 or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing federal aid highway funds.
In this case, the reports conducted were for the specific purpose of highway safety construction and a determination of a hazardous conditions, which, if discovered would have mandated correction. Because the roads were eligible for 90 percent federal funding |7of these corrections only if compliance with the mandate of 23 U.S.C.A. § 152 existed, it logically follows that the studies conducted were performed pursuant to the provisions of Title 23 irrespective of the source of a complaint.
Finally, any testimony relating to this inadmissible evidence is likewise inadmissible. Stephens v. Town of Jonesboro, supra; Martinolich v. Southern Pacific Transportation Co., supra.
STANDARD OF REVIEW
Because we find error in the trial court admission of these exhibits, we must determine the effect of such error upon the verdicts rendered in this case. Ordinarily, a trier of fact’s findings of fact are reviewed under the manifest error standard. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where some consequential error such as the improper admission or exclusion of evidence interdicts the fact-finding process, the manifest error standard is no longer applicable, and the appellate court must make its own independent review of the record, giving no weight to the verdict and deciding the case by a preponderance of the evidence. McLean v. Hunter, 495 So.2d 1298 (La.1986); Hines v. Arkansas Louisiana Gas Co., 613 So.2d 646 (La.App.2d Cir. 1993), writ denied, 617 So.2d 932 (La.1993).
In this ease, of the evidence which we find erroneously admitted, plaintiffs’ Exhibits 36, 33, 37 are actually favorable to the state’s case. However, plaintiffs’ Exhibit 29, prepared after the accident in question recommends that a turn lane as well a flashing beacon be installed at this intersection due to increased traffic counts. Because the issue of whether or not both the turn lane and the yellow flashing beacon were warranted at the time of the accident were central issues in the plaintiffs claim of negligence against the state, the erroneous introduction of the later recommendations certainly had the potential to extremely prejudice the final decision of the factfinders. Certainly, evidence that this action was taken by the state suggests that the action should have been taken at the time of the accident thereby raising an unwarranted influence that the state was negligent at the time of the accident in question. Inherent in the remedial nature of the evidence is the | gimplication that the actions should have been taken before the accident. Therefore, based upon the nature of this evidence, we find both the jury and trial court verdicts to be tainted. These verdicts are not entitled to a presumption of regularity. We must therefore make an independent, de novo assessment of liability, without deference to either verdict, determining if plaintiffs have proven their case by a preponderance of the evidence. McLean, supra.
LIABILITY APPLICATION OF LSA-R.S. 32:235
LSA-R.S. 32:235E provides that proof that any state authority was at the *53 time of any incident complained of in compliance ’with the provisions of the department’s traffic control device manual shall be prima facie evidence of discharge by such authority of its obligations to the motoring public. In this case, the evidence reveals that there existed two different types of signs placed before the intersection in question. Donald Tolar, an expert in highway design called on behalf of the state, testified that in approaching this intersection a motorist would first see a yellow and black crossroad caution sign approximately 1048 feet from the intersection. Next, the motorist would see a junction sign approximately 872 feet from the intersection. He testified that pursuant to the Uniform Manual of Traffic Control Devices, a crossroad sign should be placed a minimum of five-hundred feet from an intersection.
Additionally, a junction sign should be placed a minimum of four-hundred feet from the intersection. This provides adequate time for the motorist to react to the sign. He testified that the instant signs were strategically placed because of the hill which existed. He noted that if the signs had been placed at the 400-foot and 500-foot minimums, then a motorist would have possibly not seen the sign until he got to the top of the hill. Therefore, the junction sign was placed south of the crest of the hill and then the crossroad sign was placed south of that in order to give the motorist a clear view of the signs before he topped the crest of the hill so that he would be aware of what was over the hill.
|i)He testified that the American Association of State Highway Officials manual, approved by the Federal Highway Administration, provides for the 500-foot distance for warning signs because it takes approximately 446 feet for a vehicle to stop from the time its driver is aware of a caution sign. Tolar testified that the highway in question was in complete compliance with the Uniform Manual of Traffic Control Devices and, in fact, went beyond that called for in that manual in light of the fact that normally a warning sign is not installed if a junction assembly is installed because a junction assembly gives you notice that you’re approaching an intersection.
The testimony of Sylvanus Cage Walker, plaintiffs’ expert in accident reconstruction, indicated that he agreed that the state was in compliance with the Uniform Manual of Traffic Control Devices. He also agreed with the distances determined by Tolar relating to the placement of the warning signs.
The only contrary evidence is Walker’s testimony which indicated that in his opinion a yellow flashing beacon should have been installed at the intersection at the time of the accident. We do not find however, that this testimony serves to rebut the prima facie case established by the state. Tolar testified that a flashing yellow light signal was not warranted in this case because the department of transportation guidelines provided for the installation of the flashing beacon light only when there are more than three accidents in a one-year period. In this case, that had not occurred. Walker agreed that the department of transportation manual provided for the installation of a yellow beacon light only when there had been a showing of three accidents in a one-year period. He did not know how many accidents had occurred in this intersection and admitted that his conclusion that the intersection was unreasonably dangerous was not based upon department of transportation guidelines.
Clearly, the unrebutted and corroborated testimony of Donald Tolar indicates that the state was in compliance with all guidelines and thereby discharged its duty to Mr. Reic-hert. Further, the evidence indicates that the distance from the highway signs to the intersection were sufficient to place a motorist on notice of the approaching intersection. 1 ípThe sight distance between the place where a driver first sees the intersection and the actual intersection was sufficient to allow the motorist sufficient reaction time to stop. In fact, the department of transportation had strategically placed these signs below the hill so that a motorist would be aware of what was over the hill.
We find, therefore, that the expert testimony indicates that the state was beyond conformance with the department’s traffic control device manual in this case. Under these circumstances and pursuant to the provisions of LSA-R.S. 32:235, the state has *54 presented prima facie evidence of the discharge of its obligations to the general motoring public. The record before us does not reveal that the plaintiffs have succeeded in rebutting this evidence. Because plaintiffs failed to rebut this' prima facie showing, the state has sufficiently discharged its duty.
It is undisputed that the accident occurred substantially in Mr. Reichert’s lane of travel. When a collision occurs between two vehicles, one of which is in the wrong lane of travel and the other in its correct lane of travel, the driver in the wrong lane is presumed at fault and is required to exculpate himself from any fault, however slight, contributing to the accident. King v. Louviere, 543 So.2d 1327 (La.1989). Further, a motorist is held to a higher degree of care in adverse weather conditions and his duty to handle his vehicle in such a manner and at such a speed as to maintain control of it increases. Chastain v. Allstate Insurance Company, 212 So.2d 243 (La.App.2d Cir. 1968); Crockett v. United States Fidelity and Guaranty Company, 229 So.2d 169 (La.App. 1st Cir.1969), writ refused, 255 La. 286, 230 So.2d 589 (1970).
We cannot find that Williams had succeeded in exculpating himself from fault. When he entered Reichert’s lane of travel, he was presumed at fault. The inclement weather (which James Ronnie Cole who witnessed the accident verified) vested a higher standard of care for Williams in the operation of his vehicle. His failure to see the Martin vehicle, in light of the distance between the two vehicles, fell below that standard of care. Based upon the foregoing evidence and testimony, we find that the state of Louisiana fulfilled its duty to Art Reichert and is not negligent under these circumstances. We fmdjnWilliams’ actions to be the sole cause of the accident and resulting damages and assess Williams with 100 percent of the fault.
DAMAGES
Plaintiffs have answered this appeal, asserting that the jury awarded inadequate damages, specifically the $125,000 award to Mrs. Reichert for loss of service and support.
The elements of damage for a wrongful death action are loss of love and affection, loss of services, loss of support, medical expenses, and funeral expenses. Cannon v. Cavalier Corp., 572 So.2d 299 (La.App.2d Cir.1990); Watson v. C.R. Bard, Inc., 557 So.2d 739 (La.App.2d Cir.1990). Before a trial court award of damages can be questioned as inadequate or excessive, the reviewing court must look first not to prior awards, but to the individual circumstances of the case. A damage award should not be disturbed by the reviewing court absent a showing of clear abuse of discretion vested in the trial court. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Reck v. Stevens, 373 So.2d 498 (La.1979); Stephens v. Town of Jonesboro, supra; Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App.3d Cir. 1990), writ denied, 565 So.2d 450 (La.1990). The award is then “disturbed” only to the extent of lowering it (or raising it) to the highest (or lowest) point, within the reasonable discretion or range afforded by a trial court. Reck v. Stevens, supra; Stephens v. Town of Jonesboro, supra.
In this case, the economist called on behalf of the plaintiffs, Dr. Otis Gilley, testified that the loss of income for Mr. Reichert would have been approximately $439,093. This figure was based upon a 5.4-year work life expectancy and an 18-year life expectancy. Dr. Gilley did not deduct any amounts for personal consumption or income taxes. His calculations came from three sources, Mr. Reichert’s income at Louisiana Tech University, Air Force pension benefits, and the-retirement benefits that Reichert was to receive from Louisiana Tech University (he was eligible to receive that amount at any time he chose to retire). His was the only testimony relating to this issue, excepting the testimony of family members indicating the relationships between them.
1 i2Pr. Gilley admitted on cross-examination that he did not take into consideration income tax or personal consumption. While the amount of $125,000 is a conservative calculation, we cannot determine that it is abusively low when considering taxes, and per *55 sonal consumption which were not included in Dr. Gilley’s calculations. Accordingly, the jury award is affirmed.
Accordingly, we will therefore amend the trial court judgment herein of the 1st day of February, 1994, to eliminate therefrom any liability or fault assessed against the state of Louisiana and to amend paragraph “2)” on page one thereof to change the fault of A.L. Williams from 50 percent to 100 percent and to eliminate from paragraph “7)” on page one the phrase “one-half (½) of.” All costs are assessed against A.L. Williams.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.