## FEDERAL DEPOSIT INSURANCE CORPORATION

v.

### John C. YEMELOS, et al.

Civ. A. No. 91–2181.

United States District Court,
E.D. Louisiana, E.D.

Nov. 19, 1991.

David S. Rubin, S. Layne Lee, of Kantrow, Spaht, Weaver & Blitzer, APLC, Baton Rouge, La., for plaintiff.

Alfred B. Shapiro, of Holliday & Jackson, Baton Rouge, La., for the Affiliates, Inc.

Robert G. Jackson, Baton Rouge, La., for defendants.

## ORDER AND REASONS

LIVAUDAIS, District Judge.

This is an action by the Federal Deposit Insurance Corporation, in its corporate capacity ("FDIC") against John C. Yemelos and his wife Despina Cosmos Yemelos ("M/M Yemelos") to void certain transfers of property made by the Yemeloses. The suit is brought pursuant to 12 U.S.C. § 1821(d)(17), a provision of the Comprehensive Crime Control Act of 1990, and

pursuant to Louisiana law as a revocatory action under Louisiana Civil Code articles 2036–2043.

The FDIC was appointed receiver of the Bossier Bank and Trust Company. M/M Yemelos and various businesses owned by them borrowed a total of over $4 million dollars from Bossier Bank. (The Yemeloses personally guaranteed all the business loans). The loans were not repaid. The FDIC and M/M Yemelos reached a settlement regarding their debts. Pursuant to the settlement agreement, the Yemelos agreed to a consent judgment in the principal sum of $4.1 million, plus $1 million in accrued interest. They agreed to make annual payments totalling $1.5 million over the next 15 years. The first installment of $75,000 was due November 30, 1989.

The Yemelos never paid any of the installments. Prior to the first due date, they began transferring money and property to various entities, including purchasing private annuities with Prudential, MONY, and State Farm, converting assets which were not exempt from seizure into assets which were exempt from seizure, granting a chattel mortgage on property in favor of their attorney, Robert Jackson, and transferring interests in annuities to the "Affiliates, Inc.", whose previous name was Robert G. Jackson & Company, Inc. Subsequent to the transfers, the Yemeloses became, and are still, insolvent.

## Issues Presented

The defendants involved in this motion, Robert G. Jackson, attorney at law, and Affiliates, Inc. (formerly "Robert G. Jackson & Company, Inc."), seek a dismissal of the complaint because:

(a) the complaint does not state the allegations required by 12 U.S.C. § 1821(d)(17)(C);

(b) the transfers in question occurred before the effective date of 12 U.S.C. § 1821(d)(17)(C), and the statute is not retroactive;

(c) the transfer of a non-exempt asset into an exempt asset does not constitute a transfer which can be revoked under La.Civil Code article 2036.

## Sufficiency of the Allegations

The Court has reviewed the complaint and finds that it does state all of the allegations required by the statute. The motion to dismiss on this basis is without merit.

## The Effective Date of the Statute

The second question, whether or not the transfers in question occurred before the effective date of the statute, should be a simple inquiry, but somehow it is not. Both parties agree that there are no cases which specifically address the retroactive applicability of the Comprehensive Crime Control Act of 1990 which is codified at 12 U.S.C. § 1821(d)(17). The FDIC suggests that the bill was signed into law on November 29, 1990, which the defendants do not dispute. The defendants suggest that the effective date of the bill was May 28, 1991, which is 180 days after the date it was signed. The bill states:

(a) Except as provided in subsection (b), this Act and the amendments made by this Act shall take effect 180 days after the date of enactment of this Act.

The FDIC argues that this referred to only a portion of the Crime Control Act and not to the avoidance section under which this suit is brought. The Court has re-read the three pages of the memorandum upon which this argument appears (pp. 19–22) three times and still cannot understand the plaintiff's reasoning behind this argument.

All of the transfers alleged in the complaint occurred before November 29, 1990, however, so the quarrel regarding the effective date is irrelevant. If the statute is prospective only, it does not apply to these transactions regardless of whether it was effective in Nov. 1990 or in May, 1991. If it is retroactive, it does apply. Retroactivity, therefore, is the pertinent question.

## Retroactivity of the Statute

■ The statute itself is silent with respect to whether or not it is to be applied retroactively. The general rule under Louisiana law, of course, is that statutes which affect substantive rights are to be applied

prospectively only, but that statutes which affect only procedural rights are to be applied retroactively. *Harrison v. Otis Elevator Company*, 935 F.2d 714 (Duhe, J.) (5th Cir.1991). "Substantive acts are generally defined as those which create, confer, define, or destroy rights, liabilities, causes of action, or legal duties. Procedural acts describe methods for enforcing, processing, administering, or determining rights, liabilities, or status." *Harrison, Id.; McCoy v. Otis Elevator Co.*, 546 So.2d 229, 232 (La.App.2d Cir.1989). The statute in question, however, is federal, so Louisiana law is not binding, though it may be instructive.

The statute itself provides in pertinent part:

**(17) Fraudulent transfer**

**(A) In general**

The Corporation, as conservator or receiver for any insured depository institution ... may avoid a transfer of any interest of an institution-affiliated party, or any person who the Corporation or conservator determines is a debtor of the institution, in property, or any obligation incurred by such party or person, that was made within 5 years of the date on which the Corporation or conservator was appointed conservator or receiver if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the insured depository institution, the Corporation or other conservator, or any other appropriate Federal banking agency.

12 U.S.C. § 1821(d)(17)(A), Comprehensive Crime Control Act of 1990.

The statute is silent as to whether it should be applied retroactively. The FDIC argues that under *Bradley v. School Board of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), laws are to be applied retroactively unless there is a clear Congressional intent to the contrary or if "manifest injustice" would result. The defendant argues that under *Bradley*, the Supreme Court held that where antecedent rights are effected, a statute can only operate prospectively, unless the clear import

of the language and the intent of the legislature demonstrates that the statute is to have retroactive application.

The United States Supreme Court in *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) anchored its holding "on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 94 S.Ct. at 2016. The Court recognized that there are exceptions to this general rule, mainly that the general rule would not apply in circumstances where such an application would result in manifest injustice. To determine whether retroactive application of a statute would be manifestly unjust, the *Bradley* decision centered on three concerns:

- (a) the nature and identity of the parties,
- (b) the nature of their rights, and
- (c) the nature of the impact of the change in law upon those rights.

*Id.* at 2019.

The *Bradley* Court determined that the parties involved were not merely routine private litigants, but were a "School Board, a publicly funded governmental entity" and "a class of children whose constitutional right to a nondiscriminatory education has been advanced by this litigation" and that the subject matter of the suit, school desegregation, was of "great national concern." 94 S.Ct. at 2019–2020. Secondly, it noted that where the retroactive application of the change in the law "would infringe upon or deprive a person of a right that had matured or become unconditional", the law should apply prospectively. With respect to the third concern, the nature of the impact of the change in law upon existing rights, the Court discerned that there was no indication that the School Board would have altered its conduct had it known that the statute in question would have applied to it.

The Supreme Court rendered a decision whose holding appears to be in conflict with *Bradley*. The Supreme Court in *Bowen v. Georgetown University Hospital*,

488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), without discussing *Bradley*, anchored its holding on the principle that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.... Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant." 109 S.Ct. at 471.

Even more recently, the Supreme Court recognized there is an apparent tension between the *Bradley* line of decisions and *Bowen*, a tension which the Supreme Court does not resolve. In *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the Court begged the question by finding that the statute in question evidenced clear congressional intent to apply prospectively only and by declining to reconcile the two lines of precedent.

The FDIC analogizes the retroactive application of this statute to the numerous decisions which have held that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") is retroactive. *See, e.g., FDIC v. 232, Inc.*, 920 F.2d 815, 818–819 (11th Cir.1991); *Demars v. First Service Bank for Savings*, 907 F.2d 1237, 1240 (1st Cir.1990); *FDIC v. Dalba*, 1990 WL 43750, 1990 U.S. Dist. LEXIS 3502 (W.D.Wi.1990); *Triland Investment Group v. FDIC*, 735 F.Supp. 698 (N.D.Tex.1990). These courts have found that retroactive application of the FIRREA would prevent depletion of the FDIC's insurance fund, while no legitimate private expectations would be disrupted.

The task assigned in this instance is to determine whether the statute at issue is to be applied retroactively or prospectively. In attempting to complete this task logically and correctly, the Court examines the statute itself, which does not specifically provide whether or not the statute is to be applied retroactively, or even in a clear manner, its effective date. Next, the Court studies the precedents of the highest court of this nation, the Supreme Court, which contains two contrary lines of jurisprudence, and a decision which recognizes in no uncertain terms that its decisions are in conflict and further refuses to reconcile this inconsistency. A determination which should be relatively simple to reach is hampered by these complexities.

■ Upon review of the record, the statute itself, the excellent memoranda of the parties, the jurisprudence, and upon consideration of the equities involved herein, the Court shall follow the *Bradley* rule because, frankly, it yields the result which the Court finds to be the just, logical, and proper decision in this instance, and because the Court believes that Congress, in enacting the statute, intended that the statute be applied retroactively to enable the FDIC to protect its solvency so that it is available to protect the deposits of the insured depositors in this nation's banks.

In applying the *Bradley* rule, the Court finds that the parties include the FDIC, who represents and protects important public interests. The statute itself was enacted to assist the FDIC in recovering funds for its depositors. The second *Bradley* concern is the nature of the parties rights. While the defendants contend that the rights are "matured or unconditional", the plaintiff maintains convincingly that no substantive "matured or unconditional" rights of the M/M Yemelos are involved. M/M Yemelos had no right to make conveyances "with the intent to hinder, delay or defraud creditors."

Under the bankruptcy laws of the United States, the debts of a debtor cannot be discharged if the debtor, "with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed ... property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a). Further, the bankruptcy trustee "may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—(1) made such transfer or incurred such obli-

gation with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became ... indebted." 11 U.S.C. § 548. Under Louisiana law, "[a]n obligee has a right to annul an act of the obligor ... made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency." LSA–Civil Code art. 2036. Thus, § 1821(d)(17) is really a procedural tool for the FDIC, as it does not confer any substantive rights which it did not already possess by virtue of the fraudulent conveyance avoidance rules of the United States bankruptcy laws and the action to annul under Louisiana state law.

■ Finally, the Court cannot discern any true prejudice to M/M Yemelos, who, if their property transfers are any indication, are apparently quite aware of the bankruptcy laws. If indeed the property transfers in which they engaged subsequent to their agreement with the FDIC are found to be done with the intent to defraud the FDIC and resulted in increasing or causing their insolvency, those transfers could be voided under both Louisiana law and bankruptcy law.

The Court therefore concludes that § 1821(d)(17) applies retroactively to this litigation. The motion to dismiss on this basis shall be denied.

### *Failure to Allege the State Claim Properly*

■ The defendants further seek dismissal because they allege that the FDIC failed to allege the state law claim properly. If this is the case, the FDIC should be allowed to amend the complaint in an effort to state a claim. Having reviewed the complaint and the memoranda in support of the motion to dismiss, however, the Court finds that the defendants' main argument goes to the merits, i.e., whether or not the transfers of assets "increased their insolvency," whether or not M/M Yemelos are "insolvent" under the code article, etc. Under the rules of notice pleading, the complaint fairly places the defendants on notice of what allegations are being made against them and under what theories of law the

FDIC is proceeding against them. The motion to dismiss on this basis is likewise without merit.

Therefore, for the above and foregoing reasons,

IT IS ORDERED that the motion of defendants the Affiliates, Inc., and Robert G. Jackson, a Professional Law Corporation, to dismiss be and is hereby DENIED.