694 So.2d 193 (1997)
Martha REICHERT, et al.
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al.
Nos. 96-C-1419, 96-C-1460.
Supreme Court of Louisiana.
May 20, 1997.
Rehearing Denied June 30, 1997.
*195 Charles Sterling Smith, Karen Luikart Hayes, Monroe, for Applicant in No. 96-C-1419.
Donald L. Kneipp, Ernest Eugene Hastings, Kneipp & Hastings, Thomas G. Zentner, Jr., Theus, Grisham, Davis & Leigh, Monroe, Edward M. Campbell, Baton Rouge, Richard P. Ieyoub, Attorney General, for Respondent in No. 96-C-1419.
Donald L. Kneipp, Ernest Eugene Hastings, Kneipp & Hastings, Monroe, for Applicant in No. 96-C-1460.
Charles Sterling Smith, Karen Luikart Hayes, Thomas G. Zentner, Jr., Theus, Grisham, Davis & Leigh, Monroe, Edward M. Campbell, Baton Rouge, Richard P. Ieyoub, Attorney General, for Respondent in No. 96-C-1460.
TRAYLOR, Justice.[*]
We granted certiorari to determine when 23 U.S.C. § 409 precludes the admission and discovery of certain exhibits, and to decide proper appellate action in a bifurcated proceeding wherein the trial judge and the jury *196 reach inconsistent verdicts based on the trial court's erroneous exclusion or admission of evidence. For reasons stated more fully below, we hold 23 U.S.C. § 409 and its 1995 amendment are procedural in nature. Thus, application thereof is necessarily retroactive and in this case absolves the state of liability without creating manifest injustice to any of the parties.[1] The issue of the proper standard of review for bifurcated proceedings resulting in inconsistent findings is pretermitted because we find the lower court's findings of fact were interdicted by the admission of certain exhibits. The lower court's admission of four exhibits irrespective of section 409 is questioned. The court of appeal first without and then with the consideration of these exhibits found the state free from fault. For the reasons assigned herein, the result reached by the court of appeal is now affirmed.

FACTS AND PROCEDURAL HISTORY
This case arises out of a three-vehicle collision that occurred at the intersection of two Louisiana highways, resulting in the death of the driver of one of the vehicles. Highway 33 and Highway 821 are paved two-laned roads that intersect about six miles north of Ruston, Louisiana, where Highway 33 curves to the left. A hill crest is located approximately 600 feet before this intersection and the roadway drops to the intersection. To warn of the intersection, both a crossroad caution sign and junction sign are located approximately 1000 and 800 feet, respectively, prior to the intersection.
On July 26, 1991, a northbound pickup truck driven by Ronnie Martin was stopped in the travel lane preparing to make a left turn. Light rain was falling. The decedent, Arthur Reichert, was driving his pickup truck southbound on Highway 33. Defendant, A.L. Williams, was driving his pickup truck pulling a sixteen-foot flatbed trailer northbound on Highway 33. Williams passed the signs indicating the intersection, proceeded over the hill, slammed on his brakes to make an emergency stop, and lost control of his vehicle. As a result, Williams entered Reichert's lane of travel, and his trailer jack-knifed, colliding with Reichert's vehicle. The collision killed Reichert immediately. Williams also struck the rear of Martin's vehicle.
A trial by jury found Williams and DOTD each 50% at fault, relieving Reichert from any liability. In a written opinion, the trial judge applied the sudden emergency doctrine and found DOTD 100% at fault. The judge signed a single judgment reflecting the jury's decision on damages, but reflecting both the jury's and the court's assessment of fault. During trial, the court admitted into evidence three letters from the DOTD chief engineer to state representatives addressing the placement of a flashing beacon light at the intersection where the accident occurred, and a DOTD memorandum recommending against the flashing beacon. Defendants Williams and DOTD appealed.
The court of appeal affirmed the jury award of damages, reversed both trial court rulings, and held defendant Williams 100% at fault and DOTD free from fault. Reichert v. State, D.O.T.D., 656 So.2d 47 (La. App. 2 Cir.1995). (Reichert I). The court of appeal maintained the aforementioned exhibits were inadmissible under 23 U.S.C. § 409 and the Wiedeman case, and thus should not have been admitted at trial. Using that theory of inadmissibility, the court of appeal conducted a de novo review, concluding that DOTD had complied with its obligations to the general motoring public under L.S.A.-R.S. 32:235 E[2] by having two signs prior to the intersection in question, namely, a crossroad caution sign and a junction sign. Defendant Williams and plaintiffs filed writ applications with this court maintaining the exhibits were admissible under both section 409 and Wiedeman because the exhibit letters were prepared as a result of citizens' complaints about the need for a *197 flashing light at the intersection where the accident occurred and not prepared for a highway improvement project.
This court vacated the judgment of the court of appeal, found the exhibits in question were admissible, and on February 9, 1996, remanded this matter to the court of appeal to harmonize the two lower court findings. Reichert v. State, D.O.T.D., 667 So.2d 542 (La.), per curium, reh'g denied, 669 So.2d 1225 (1996). This court issued the following order:
Writ granted. Court of Appeal erred in finding that exhibits 29, 33, 36 and 37 were not admissible under 23 U.S.C.A. § 409 and this court's decision in Wiedeman v. Dixie Electric Membership Corporation, 627 So.2d 170 (La.1993). Therefore, the court erred in making a "de novo assessment of liability without deference to either verdict." Accordingly, we vacate the judgment of the court of appeal and remand the case to that court to render a judgment after giving proper deference to the jury verdict and the judgment of the trial court.
Id.
In our view, the court of appeal did not show deference to the lower court rulings as this court ordered, but rather responded to the remand by adhering to its previous determination. It held that the evidence had been erroneously admitted, although on grounds other than Section 409, or that this admission did not alter the previous finding of fault. Reichert v. State, D.O.T.D., 674 So.2d 1105 (La.App. 2d Cir.), writ granted, 679 So.2d 1357 (La.1996) (Reichert II). Thus, they avoided the question of how to reconcile inconsistent judge and jury verdicts and determined the appropriate standard of review was de novo. The appellate court further held that the letter and study prepared at the request of a state representative after the accident were remedial measures which were inadmissible to show negligence on the part of the state. Finally, the court of appeal held that three other exhibits they previously deemed inadmissible but this court deemed admissible were favorable to the state's case, and thus did not alter the prior determination that the state was not at fault. The court of appeal again found Williams solely at fault for the accident and DOTD free from fault. We granted plaintiffs' and Williams' application for certiorari to review the correctness of this decision.

LAW AND DISCUSSION

Interpretation and Application of 23 U.S.C. § 409
23 U.S.C. § 409 was enacted to preclude from discovery and evidence any report, survey, schedule, list, or data collected or compiled for developing any highway safety construction improvement project which may be implemented with Federal-aid funds. The purpose of section 409 is to "[f]oster the free flow of safety-related information by precluding the possibility that such information later would be admissible in civil suits. The interest to be served by such legislation is to obtain information with regard to the safety of roadways free from the fear of future tort actions." Perkins v. Ohio Dept. Of Transp., 65 Ohio App.3d 487, 584 N.E.2d 794 (1989), cause dismissed, 57 Ohio St.3d 612, 566 N.E.2d 673, reh'g denied, 58 Ohio St.3d 711, 570 N.E.2d 281 (1991). Section 409 provides:
Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of the title or for the purpose of developing any highway safety construction improvement project which may be implemented using Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data. (As amended Nov. 28, 1995, P.L. 104-59, Title III, § 323, 109 Stat. 591).
We hold section 409 bars discovery and introduction into evidence of all highway safety information collected or compiled by the State for the purpose of obtaining federal funds to enforce safety. Here, the four *198 plaintiff's exhibits must be analyzed with the purpose of section 409 in mind. Exhibit 29, contains a letter dated May 14, 1992,[3] from DOTD's chief engineer to a state representative, and discusses a traffic safety study at the intersection where the instant accident occurred. This exhibit included an attached report compiled from the study, which includes a recommendation and proposed budget for the installation of a flashing beacon. Exhibit 33 contains a letter dated March 21, 1985, from DOTD's chief engineer responding to the request for a flashing beacon at the same intersection. This exhibit includes a report discussing the results of a traffic volume study and concluding that the volume at that intersection did not dictate a need for a flashing beacon. Moreover, this report states that a review of DOTD's accident files revealed no abnormal or unusual conditions at the intersection. Exhibit 36 contains a letter dated March 2, 1988, from DOTD which states that additional reports based on traffic volume studies and surveys failed to demonstrate a need for the installation of traffic control devices at that intersection. Finally, Exhibit 37, a letter dated February 24, 1988, from DOTD, recommends against a flashing beacon based on the results from a spot speed study, a traffic volume study, a sight distance study and a review of the accident record for the one-year evaluation period. The aforementioned exhibits were erroneously admitted by the trial judge as each of them reflects information collected and compiled by the DOTD in furtherance of potential highway safety projects that may have been supported by federal funds. Consequently, these exhibits were properly excluded from review by the court of appeal in Reichert I. This court, in its per curium, stated that the appellate court erred in failing to consider these exhibits while reviewing the decisions of the lower court. This court based the admissibility of these exhibits on 23 U.S.C. § 409 as interpreted in Wiedeman.
In Wiedeman, this court recognized the importance of section 409 in that it "[f]orms part of a comprehensive federal plan to promote highway safety," and held that the following are admissible and discoverable: accident reports; traffic counts; and other raw data collected by the DOTD. Wiedeman, 627 So.2d at 173. Furthermore, this court held that exhibits considered not admissible and discoverable included: surveys to identify hazardous railroad crossings and improve them (§ 130); applications for federal assistance in replacing or rehabilitating highway bridges (§ 144); studies assigning priorities and schedules of projects for highway improvement (§ 152); and other compilations made for developing highway safety construction projects which would utilize Federal-aid funds (§ 409). Id. at 173. Thus, an exception to section 409's immunity was created for accident reports, traffic counts, and other raw data. It was this holding upon which this court relied in issuing the per curium order to the second circuit.
On November 28, 1995 section 409 was amended to include the words "or collected" after "compiled" to effectively eliminate the admissibility of "[a]ccident reports, traffic counts, and other raw data collected by the Department" allowed by the holding in Wiedeman. Id. This clarification was added in response to recent State court decisions, like Wiedeman, that in the view of Congress, misinterpreted the term "data compiled." "It is intended that raw data compiled prior to being made part of any formal or bound report shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such data." Act of November 18, 1995, Pub.L. No. 104-59, 1995 U.S.C.C.A.N. (109 Stat.) 568 (hereinafter "1995 U.S.C.C.A.N."). In other words, such information is collected or compiled to protect the public by ensuring that safety measures are routinely explored by DOTD without exposing their efforts.
Plaintiffs allege that the exhibits at issue are relevant and admissible to show the dangerous condition of the accident sites and *199 to show actual or constructive knowledge on the part of DOTD in order to prove the State's negligence caused or contributed to the accident. Defendant Williams contends an absence of negligence on his part exists due to the faulty intersection. The DOTD correctly argues that these exhibits are comprised of data collected to make a decision on highway safety enhancement that may use federal funds and thus are to be excluded from state court tort action pursuant to section 409. We now find that the exhibits in question are exactly what section 409 was designed to protect from discovery and admission into evidence.
Since the accident here occurred before the amendment of section 409, the amendment's retroactive application must be examined. Initially, a court must defer to legislative intent when determining whether a statute should be applied prospectively or retroactively. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694, reh'g denied, 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984). Further, "[a]lthough [the United States Supreme Court has] long embraced a presumption against statutory retroactivity, for just as long [they] have recognized that, in many situations, a court should `apply the law in effect at the time it renders its decision,'... even though that law was enacted after the events that gave rise to the suit." Landgraf v. USI Film Products, 511 U.S. 244, 245, 114 S.Ct. 1483, 1486, 128 L.Ed.2d 229 (1994), (citing Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974)). Under Bradley, "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley, 416 U.S. at 711, 94 S.Ct. at 2016. Manifest injustice is determined by examining the nature and identity of the parties, the nature of their rights and the impact of the change in law on those rights. Federal Deposit Ins. Corp. v. Yemelos, 778 F.Supp. 329, 331 (E.D.La.1991) (citing Bradley, 416 U.S. at 717, 94 S.Ct. at 2019).
Here, the legislative intent for retroactive application is easily ascertained. Based on its purpose, we find the amendment is procedural, and seeks to rectify the misapplication of the statute by various state courts. 1995 U.S.C.C.A.N. at 568. Section 409 and its amendment instruct us on the admissibility or inadmissibility of evidence. The amendment merely clarifies what the original statute purported to enact. Section 409 was enacted before the date of this accident. The statute predates the accident, and is controlling.
However, even if legislative intent were uncertain, section 409 as amended would still warrant retroactive application. No manifest injustice will result from the retroactive application of section 409. Examining section 409 under the Bradley rule results in the same conclusion. Here, one of the parties involved is the Louisiana Department of Transportation and Development, a party who represents and protects important public interests. The statute itself was enacted to insulate DOTD from liability when upholding its public trust of continually examining the safety of public highways. The second concern enunciated in Bradley involves the nature of the rights involved. The extent to which certain documents are discoverable or admissible is clearly a procedural right. Reichert is not deprived of a constitutionally vested right when deprived of the evaluations and recommendations of the DOTD. Finally, under Bradley the impact of the "change"[4] in those rights is examined. Here, Reichert is not deprived of his cause of action. He merely can not rely upon the DOTD for his discovery. Such an impact is insignificant in light of the likely legislative intent.
Consequently, whether examined under clear legislative intent or by applying the Bradley rule, section 409's amendment must be applied retroactively to the date of its original enactment. To do otherwise would thwart the purpose of enacting the amendment.
*200 The court of appeal properly held that Exhibits 29, 33, 36 and 37 are encompassed within the exclusion of section 409. Moreover, that those studies were conducted pursuant to citizen's complaints in no way affects the applicability of those provisions to that evidence. Reichert I, 656 So.2d at 51. The exclusion of discovery and evidence mandated by section 409 encompasses more than just simple factual information. "It also includes documents held by the DOTD that may reflect mental impressions, conclusions, and opinions of DOTD representatives regarding the survey results." These documents are therefore not admissible. Martinolich v. S. Pacific Transp. Co., 532 So.2d 435 (La.App. 1st Cir.1988), writ denied, 535 So.2d 745(La.), cert denied, 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1027; Stephens v. Town of Jonesboro, 642 So.2d 274 (La.App. 2d Cir.), writ denied, 646 So.2d 400 (La. 1994).

Standard of Review
Having decided that the lower court findings of fact were based on erroneously admitted evidence, we must now address the issue of proper appellate action and what standard of review should be applied. Specifically, the court of appeal's initial review of this case is examined. Reichert I, 656 So.2d 47. As previously stated, this court did not conduct a supervisory review in Reichert I, but rather remanded with the above mentioned per curium.
Defendant DOTD maintained five assignments of error by the trial court: (1) the trial court erred by admitting evaluations of the highway in question into evidence, contrary to section 409; (2) the trial court erred by not following LSA-R.S. 32:235(E), which provides that evidence showing that traffic warning devices are in compliance with appropriate design standards presents a prima facie proof of adequacy; (3) the trial court erred by admitting reports into evidence concerning other accidents at the intersection in question to prove that DOTD had knowledge of defects; (4) the trial court erred in finding negligence on the part of the state; and (5) the trial judge erred in applying the "sudden emergency doctrine" to Williams' actions, maintaining that Williams' actions created the emergency. Id. at 50.
The first assignment of error is meritorious for the reasons outlined supra. The second circuit correctly resolved that issue by finding that Exhibits 29, 33, 36 and 37 were not admissible under section 409. Having found this error, the appellate court then decided the manifest error standard would not apply as the improper admission of evidence had tainted the fact-finding process. Thus, the appellate court concluded it "[m]ust make its own independent review of the record, giving no weight to the verdict and deciding the case by a preponderance of the evidence." McLean v. Hunter, 495 So.2d 1298 (La.1986); Hines v. Arkansas Louisiana Gas Co., 613 So.2d 646 (La.App. 2d Cir.), writ denied, 617 So.2d 932 (La.1993). Significantly, a review of the erroneously admitted exhibits at issue reveals the court of appeal found that Exhibits 33, 36 and 37 were actually favorable to the state's case. Additionally, their review of Exhibit 29 revealed that it had been prepared after the accident had occurred. Thus, the DOTD's recommendation for a flashing beacon had the potential to prejudice the decision of the fact finders "[b]y raising an unwarranted influence that the state was negligent at the time of the offense. Inherent in the remedial nature of the evidence is the implication that the actions should have been taken prior to the accident." Id. at 52. Consequently, finding that the judge and the jury verdicts were tainted by the admission of these exhibits, and that they were therefore not entitled to deference, the court of appeal correctly decided a de novo assessment of the issue of liability was necessary.
The second contention raised by DOTD addressed LSA-R.S. 32:235 E, focusing on whether DOTD had complied with the provisions of its traffic control device manual. The appellate court treated this issue by examining the types of traffic control devices that existed at the time the accident occurred. The record indicated that a black and yellow crossroad caution sign was in place about 1048 feet before the intersection. Also, a junction sign was in place about 872 feet before the intersection. According to *201 the Uniform Manual of Traffic Control Devices, a crossroad sign must be placed a minimum of 500 feet from an intersection, and a junction sign a minimum of 400 feet from the intersection. A state expert explained that the decision not to place the devices at the minimum distance from the intersection was to provide adequate time for a motorist to respond to them. In fact, the plaintiff's expert in accident reconstruction indicated that he agreed with the distances and that the State was in compliance with the Uniform Manual of Traffic Control Devices. Id. at 53. Only one witness for plaintiffs and Williams testified that a yellow flashing beacon should have been place at the intersection. This witness was not qualified as an expert in highway design, construction and maintenance. In response, the state's expert testified the DOTD manual only requires a flashing light when more than three accidents occur in a one-year period at an intersection, which was not the case here. As a result, the second circuit reasoned that the testimony of one witness was not enough to rebut the prima facie case established by the state. Thus, the court found the state was beyond conformance with their manual's requirements and thereby discharged its duty to the plaintiff. We agree.
Our review of this entire record shows that the DOTD fulfilled its duties and was not negligent. The court of appeal did not, and we cannot, say the same about defendant Williams. This accident occurred predominantly in Reichert's lane of travel. Since Williams entered the wrong lane of travel when the accident occurred, he is presumed to be at fault and is required to exculpate himself from any fault, however slight, that may have contributed to the accident. King v. Louviere, 543 So.2d 1327 (La. 1989). All parties agree that this accident occurred on a slightly rainy day. A motorist will be held to a higher standard of care in adverse weather conditions and will be expected to control his vehicle in a manner and at a speed he can handle. Chastain v. Allstate Ins. Co., 212 So.2d 243 (La.App. 2d Cir.1968); Crockett v. U.S. Fidelity & Guar. Co., 229 So.2d 169 (La.App. 1st Cir.1969), writ refused, 255 La. 286, 230 So.2d 589 (1970). Therefore, we find the court of appeal correctly determined Williams had not risen above his higher standard of care, and thus having absolved the DOTD from liability, found Williams' actions to be the sole cause of the accident.
We turn next to plaintiffs' assertion that damages were inadequate. "A damage award should not be disturbed by the reviewing court absent a showing of clear abuse of discretion vested in the trial court. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper." Reck v. Stevens, 373 So.2d 498 (La.1979); Stephens, 642 So.2d at 284; Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3d Cir.), writ denied, 565 So.2d 450 (La.1990). Here, plaintiffs received $235,000 for the loss of love and affection, $125,000 for the loss of services and support, and $7,000 for medical and funeral expenses. The court of appeal in Reichert I and II affirmed these amounts and reasoned no abuse of discretion occurred in their determination. We agree. Accordingly, the amount of damages and the apportionment thereof adopted by the appellate court is hereby affirmed.

CONCLUSION
In Reichert I, the second circuit properly found that Exhibits 29, 33, 36 and 37 were reports evaluating the data collected to make a decision on safety enhancement upgrades that may use federal funds. Further, the appellate court held those reports to be the quintessential evidence intended by the United States Congress to be excluded from state court tort actions. Appropriately, the second circuit determined the admission of these exhibits tainted the lower court findings, warranted their de novo review and absolved the state from liability in this case. We now adopt the reasoning employed therein, and rule that Section 409 is to be applied retroactively. Subsequently, in Reichert II, the court of appeal, with the admissibility of the aforementioned exhibits, again found the state free from fault. We agree and now affirm the holdings in Reichert II.

*202 DECREE
For the reasons assigned herein, the judgment of the court of appeal in Reichert II is affirmed.
LEMMON, J., concurs and assigns reasons.
JOHNSON, J., concurs.
LEMMON, Justice, concurring.
The majority correctly affirms the judgment of the court of appeal, but errs, in my view, in two respects. First, it is unnecessary to address the retroactivity of the 1995 amendment to 23 U.S.C. § 409, because the disputed evidence was not admissible even under the pre-amendment version of the statute as interpreted by Wiedeman v. Dixie Elec. Membership Corp., 627 So.2d 170 (La. 1993), cert. denied, 511 U.S. 1127, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994).[1] Second, the majority, in addressing the retroactivity issue, incorrectly decides that a judgment based on evidence admissible under the law at the time of trial must be reversed and the entire case retried if the evidence would be inadmissible under an amendment adopted after the trial.
Putting the "retroactivity" issue in proper perspective, I believe the issue would be more appropriately framed as whether the amendment applied to the admissibility of the evidence at the time the evidence was offered. Framing the issue in terms of retroactivity begs the question of "retroactive to when."
The labeling of an amendment as procedural does not automatically justify retroactive application of the amendment to all pending cases. Landgraf v. USI Film Products, 511 U.S. 244, 275 n. 29, 114 S.Ct. 1483, 1502 n. 29, 128 L.Ed.2d 229 (1994). Rather, a court, in resolving a retroactivity question, must consider the purpose and nature of the amendment, and also must consider the posture of the case.
The 1995 amendment to 23 U.S.C. § 409 changed an evidentiary rule, and the amendment was adopted after this case had been tried. Evidentiary rules are designed to govern the admissibility of evidence presented during the trial. Logical reasoning dictates that an amendment to an evidentiary rule should not be applied retroactively to a case where the evidence has already been introduced under the law applicable at the time, the trial has been completed, and the case was on appeal at the time of the adoption of the amendment. The admissibility of evidence should be governed by the law in effect at the time the evidence was offered. Otherwise, any amendment to evidentiary rules would generate the necessity for countless new trials.
The majority cites two United States Supreme Court cases, Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), for the proposition that an appellate court generally is required to apply the law in effect at the time of its decision. Neither of these cases involved an amendment to an evidentiary rule.
The Court in Bradley, although stating the general language invoked by the majority, held that an amendment authorizing the award of attorney's fees to successful plaintiffs in school discrimination cases applied retroactively on appeal.[2] However, the Court thereafter in Landgraf, in declining to apply retroactively a comprehensive revision of the Civil Rights Act providing for (among other things) punitive damages and jury trials, cautioned that "Bradley did not alter the well-settled presumption against application of the class of new statutes that would have genuinely `retroactive' effect" and in which *203 the anti-retroactivity presumption remains live and well.
Moreover, the Court in Landgraf noted that an amendment to an evidentiary rule would not require an appellate court to order a new trial. Id. Likewise, Justice Scalia in his concurring opinion gave the following example which is especially pertinent here:
A new rule of evidence governing expert testimony, for example, is aimed at regulating the conduct of trial, and the event relevant to retroactivity of the rule is introduction of the testimony. Even though a procedural rule, it would unquestionably not be applied to testimony already takenreversing a case on appeal, for example, because the new rule had not been applied at a trial which antedated the statute.
Landgraf v. USI Film Products, 511 U.S. 244, 291-92, 114 S.Ct.1522, 1525, 128 L.Ed.2d 229 (emphasis added).
While I strongly disagree with the majority on the "retroactivity" issue, I nevertheless concur in the result for the reasons stated above.
NOTES
[*] Calogero, J., not on panel. Rule IV, Part 2, § 3.
[1] Section 409 precludes the discovery and admission of any report, survey, schedule, list or data collected or compiled for developing any highway safety construction project which may be implemented with Federal-aid funds.
[2] LSA-R.S. 32:235 E provides that proof that a statutory authority was at the time of the incident in compliance with the department's traffic control device manual establishes a prima facie case of discharge of that authority's duty to the motoring public.
[3] This exhibit was prepared upon request of a state representative after the date the accident occurred.
[4] Arguably, here no change in the law occurred because of the interpretive nature of the amendment.
[1] Believing this court erred in reversing the first decision of the court of appeal, I voted to grant a rehearing after that reversal. See 95-1775 (La.3/22/96); 669 So.2d 1225.
[2] Obviously, an amendment authorizing an award of attorney's fees can be applied at any time until the judgment becomes final. Application of such an amendment to cases pending on appeal at the time of adoption is vastly different from similar application of an amendment to evidentiary rules.