743 So.2d 743 (1999)
James W. LONG, Individually and on Behalf of his Minor Son, Christopher W. Long, and Jamie Long Coley, Plaintiffs-Appellants,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellee.
No. 32,124-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
Rehearing Denied September 16, 1999.
*744 Richard L. Fewell, Jr., West Monroe, Counsel for Appellants.
Louisiana Department of Justice by William E. Crawford, Jr., Assistant Attorney General, Counsel for Appellee.
Before STEWART, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
The surviving spouse, James W. Long, individually and on behalf of his minor son, Christopher W. Long, and the surviving major child of Betty Long, Jamie Long Coley ("Plaintiffs"), appeal the judgment of the trial court striking certain allegations in their petition relating to particular correspondence, striking the correspondence from the record and the resulting grant of the Department of Transportation and Development's ("DOTD") motion for summary judgment dismissing Plaintiffs' case. For the following reasons, we reverse.

FACTS
On September 10, 1997, at a crossing on Harp Street in the village of Bonita, Louisiana, a Union Pacific train struck a car driven by Mrs. Betty Long. The crash killed Mrs. Long. Her husband, James Long, her adult daughter, Jamie Long Coley, and her minor son, Christopher Long, brought wrongful death and survival actions against the DOTD. Plaintiffs alleged that the DOTD was negligent in failing to erect adequate warning devices at the crossing and in failing to adequately mark the crossing.
Plaintiffs further alleged that the DOTD breached a duty it assumed two years earlier to signalize the crossing. In support of this allegation, Plaintiffs presented to the court correspondence between Mayor Michael J. Lytle of Bonita and the DOTD. The first letter, from the mayor to the DOTD, read as follows:
May 18, 1995
Mr. Bill (sic) Shwersberry
State of Louisiana
Department of Transportation and Development
P.O. Box 94245
Baton Rouge, LA XXXXX-XXXX
Dear Mr. (sic) Shwersberry:
On May 12, 1995, there was (sic) an fatal accident at (sic) an railroad grade crossing in Bonita. The grade crossing is unmarked except for wooden cross-bucks. Mr. David Peterson of the Union Pacific RR informs me that your office is in charge of determining whether warning lights or gates are needed at grade crossings.
There have been two previous accidents at this crossing, one with a fatality in the last eight years. I believe that some additional warning is needed at this crossing and am requesting an on-site review of the situation by your office.
Sincerely,
/s/
Michael J. Lytle, Mayor
Village of Bonita
The DOTD responded to the mayor's letter as follows:

*745 September 6, 1995
STATE PROJECT NO. XXX-XX-XXXX
FAP NO. PENDING
UP (BONITA)
DOT NO. 438-805J
HARP STREET
MOREHOUSE PARISH
The Honorable Michael J. Lytle
MayorCity of Bonita
Post Office Box 228
Bonita, Louisiana 71223
Dear Mr. Lytle:
Under the above referenced project, the Department plans to signalize the railroad crossing from funds available through a federal safety program. In order to comply with Federal Highway Administration requirements, the local governing body must agree by letter or resolution to maintain both pavement striping and signs.
Please see attached sheet copied from Manual of Uniform Traffic Control Devices. There will normally be two signs and two sets of pavement markings to maintain.
Upon receipt of your concurrence, the Department will proceed with the necessary steps to obtain approval from FHWA to complete the project.
Very truly yours,
/s/
Merlin A. Pistorius
Chief, Maintenance Division
Mayor Lytle responded with this letter:
September 13, 1995
Mr. Merlin A. Pistorius
State of Louisiana
Department of Transportation and Development
P O Box 94245
Baton Rouge, LA XXXXX-XXXX
RE: STATE PROJECT NO. XXX-XX-XXXX
 FAP NO. PENDING
 UP (BONITA)
 DOT NO. 438-805J
 HARP STREET
 MOREHOUSE PARISH
Dear Mr. Pistorius:
We were happy to receive your letter of September 6, 1995, stating your intention to signalize the above referenced railroad crossing. We understand our obligation to maintain the pavement striping and signs.
By this letter we agree to maintain the pavement striping and signs.
 Sincerely,
 /s/
 Michael J. Lytle, Mayor
 Village of Bonita
In response to Plaintiffs' petition, the DOTD filed a motion to strike the correspondence from the pleadings and record and a motion for summary judgment. The motion for summary judgment asserted that the Harp Street crossing was not part of the state highway system and that the DOTD is forbidden to perform maintenance on such "off-system" crossings. Both motions asserted that the DOTD's correspondence with Mayor Lytle was information compiled or collected solely due to the DOTD's participation in the Federal Railway Upgrade Safety Program, 23 U.S.C. § 130, and was protected from discovery or admission into evidence pursuant to 23 U.S.C. § 409, which reads as follows:
Notwithstanding any other provision of law, reports, surveys, schedules, lists or data compiled, or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossing, pursuant to sections 130, 144 and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for *746 damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.
In support of its motion for summary judgment, the DOTD attached affidavits from Steven Cumbaa, the DOTD's construction services engineer, and from William C. Shwersberry, Jr., the DOTD's administrator of the Federal Railroad Safety Program ("FRSP"). Mr. Cumbaa stated that the crossing was not a part of the state highway system; and Mr. Shwersberry indicated, inter alia, that the only reason the DOTD would collect or compile information about, or maintain, the crossing was because of the FRSP.

DISCUSSION
On appeal, Plaintiffs have not challenged the implicit finding of the trial court that the Harp Street crossing was not a part of the state highway system (La. R.S. 48:191) and, thus, not within the DOTD's statutory responsibility. La. R.S. 48:757. Rather, Plaintiffs assert that the correspondence between Bonita's mayor and the DOTD was admissible and created a duty for the DOTD to signalize the crossing.
Plaintiffs rely heavily on Rick v. State, Department of Transportation and Development, 93-1776 (La.1/14/94), 630 So.2d 1271, which was rendered before 23 U.S.C.A. § 409 was amended to exclude certain evidence from trial. In Rick, the plaintiffs were the survivors of a motorist killed on July 20, 1988, in a train-car crash at an off-system crossing in Hammond, Louisiana. The plaintiffs sued the DOTD, urging that it was liable for failing to signalize the crossing. The supreme court explained the federal scheme of crossing improvement:
State highway railroad crossings are regarded as on system, and other railroad crossings are off system. The Highway Safety Act of 1973, the federal law making railroad crossing funds available to the states, imposed an affirmative duty to survey those crossings. 23 U.S.C. § 130(d). See CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 663, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).
In 1976, the United States Congress began funding off system crossings, paying ninety percent of the costs. In 1983, after enactment of the Federal Surface Transportation Assistance Act of 1982, the Louisiana DOTD started upgrading off system crossings. Initially, the DOTD's program was limited to urban off system crossings. By 1984, the DOTD was also improving rural off system crossings.
In Rick, the DOTD responded to the plaintiffs' action by asserting that this scheme did not impose a duty upon the agency to signalize the off-system crossing. The plaintiffs, however, obtained and introduced into evidence a letter written in August 1983 by Hammond Mayor Debbie Saik Polk, to the DOTD, requesting active warning devices for three dangerous crossings, including the crossing where the fatal accident later occurred. On September 10, 1986, the DOTD selected the crossing for upgrade with "active warning devices, automatic signal lights and automatic gates, plus rubber mats to smooth the rough surface." The case does not specify how the plaintiffs learned that the DOTD had selected the crossing for upgrade. The DOTD and the railroad inspected the crossing on April 7, 1987, but the railroad did not approve the upgrade until after the fatal accident.
The supreme court rejected the DOTD's argument that it had no duty to upgrade the crossing. The court stated:
Here, it is unnecessary to decide whether the DOTD had an affirmative duty because the DOTD assumed a duty to upgrade this crossing by selecting it for improvement on September 10, 1986. Once a duty is assumed, negligent breach of that duty may create liability. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
*747 Other cases where the DOTD was found to have assumed a duty to improve a crossing include Archon v. Union Pacific Railroad, 94-2728 (La.6/30/95), 657 So.2d 987, rehearing granted, 94-2728 (La. 7/2/96), 675 So.2d 1055; and Cambre v. National Railroad Passenger Corporation, et al., 97-473 (La.App. 5th Cir. 12/10/97), 705 So.2d 237.
Under Louisiana's law of discovery, parties may obtain discovery regarding any matter not privileged which is relevant to the subject matter of the action. La. C.C.P. art. 1422. Further, evidence which is relevant is generally admissible into evidence. La. C.E. art. 402. With regard to certain highway safety information, however, Louisiana's law is preempted by federal law. In Archon, supra, the plaintiffs learned that the DOTD had assumed responsibility for improving the crossing through evidence that was not restricted by 23 U.S.C. § 409; and in Cambre, supra, the issue was not before the court of appeal.
In Wiedeman v. Dixie Electric Membership Corp., 627 So.2d 170, 172 (La.1993), the supreme court stated:
Despite the State's substantial interest, Sec. 409's explicit preemptive language overrides conflicting state law by virtue of the Supremacy Clause. U.S. Const. art. VI, cl. 2; Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, 613 (1977). Section 409 controls. Beecher v. Keel, 607 So.2d 549 (La.1992)....
Since preemption is never presumed, Sec. 409 must be construed restrictively to prohibit only what is expressly proscribed. Rath Packing Co., 430 U.S. at 525, 97 S.Ct. at 1309.
The Rick and Wiedeman cases were decided under a previous version of the statute which did not restrict access to raw data; that restriction was added in 1995.
In Reichert v. State, Department of Transportation and Development, et al., 96-1419 (La.5/20/97), 694 So.2d 193, 197, the supreme court interpreted the change in § 409, stating:
We hold section 409 bars discovery and introduction into evidence of all highway safety information collected or compiled by the State for the purpose of obtaining federal funds to enforce safety.
In Reichert, the court addressed the admissibility of four exhibits. Each of these exhibits contained or made reference to a report or study produced pursuant to the State's effort to obtain federal funds for safety improvements. The court concluded that the exhibits "reflect[ed] information collected and compiled by the DOTD in furtherance of potential highway safety projects that may have been supported by federal funds" and were, thus, inadmissible. This conclusion was reached despite the fact that the studies were not conducted to further a potential federally funded highway safety program, but "pursuant to citizen's complaints." Id, at 200.
In the recent Louisiana Supreme Court decision of Palacios v. Louisiana and Delta Railroad Inc., 98-2932 (La. 7/2/99), 740 So.2d 95, the court set out four criteria to test the applicability of § 409. The information in question must be:
(1) reports, surveys schedules, lists or data;
(2) compiled or collected;
(3) for the purpose of identifying, evaluating or planning the safety enhancement of ... railway-highway crossings;
(4) pursuant to 23 U.S.C.A. § 130.
Coupling this criteria with the analysis set forth in Reichert, supra, and mindful that "all highway safety information collected or compiled by the State for the purpose of obtaining federal funds to enforce safety" must be excluded, we conclude that 23 U.S.C.A. § 409, in this case, bars only a portion of the correspondence from discovery or admission into evidence. The letter from Bonita's mayor to the DOTD informing the DOTD that there had been a fatal accident at the crossing is protected by the statute. That letter, which provides information about several particular events, *748 falls within the prohibition against the admission of (1) data ... (2) collected (3) for the purpose of identifying ... the safety enhancement of ... railway-highway crossings .... (4) pursuant to 23 U.S.C.A. § 130.
We are convinced, however, that the letter from the DOTD to Mayor Lytle and the responsive letter from Mayor Lytle to the DOTD contain no information restricted by the statute. Although the letter from the DOTD specifies that the federal government is the expected source of funds for the planned improvement, it makes no reference whatsoever to any "reports, surveys, schedules, lists, or data," the only items "expressly proscribed" from admission or discovery. Palacios, supra; Wiedeman, supra. These letters are unlike the exhibits in Reichert which contained reports or data along with information about the DOTD's plans. Further, the letters contain no suggestion that the planned improvement was based on any of the restricted information. We, therefore, distinguish these letters from the contract involved in Stephens v. Town of Jonesboro, 25,715 (La.App.2d Cir.8/19/94), 642 So.2d 274, which contained "information relating to a highway safety construction improvement."
We do not believe that the mere reference to the project's funding through the federal program constitutes "reports, surveys, schedules, lists, or data" for the purpose of the statute. Unlike Archon, supra, the DOTD's duty here was grounded in the federal highway-aid program, but this alone does not require the exclusion of the letters which do not contain or refer to any of the prohibited material. 23 U.S.C.A. § 409 is specific about what information is protected. The purpose of § 409 is to "[f]oster the free flow of safety-related information by precluding the possibility that such information later would be admissible in civil suits. The interest to be served by such legislation is to obtain information with regard to the safety of roadways free from the fear of future tort actions." Reichert, supra, at 197, citing Perkins v. Ohio Dept. Of Transp., 65 Ohio App.3d 487, 584 N.E.2d 794 (1989), cause dismissed, 57 Ohio St.3d 612, 566 N.E.2d 673, reh'g denied, 58 Ohio St.3d 711, 570 N.E.2d 281 (1991). The two letters in the case sub judice do not contain or refer to any such safety information. The statute should be strictly construed to protect only that information within its ambit. Wiedeman, supra. See also Palacios, supra, which stated, "[o]f course, this is not to say that all documents and information in the state's possession will always be privileged under § 409.... only ... records amassed pursuant to the federal safety evaluation program ... or for the purpose of developing other highway safety improvement projects which may be federally funded, are protected."[1]
We find, therefore, that the trial court erred by striking these documents from the record. It thus follows that since Plaintiffs' theory of the case rests partly on the matter addressed in the letters and because the trial court erred in excluding these letters from the record, the trial court's ruling granting the DOTD's motion for summary judgment on that issue is also in error.
With the DOTD's September 6, 1995 letter, Plaintiffs have alleged that the DOTD assumed a duty which was breached during the two-year delay between the time of that letter and the accident. In view of Rick, supra and Archon, supra, material fact issues regarding the extent and breach of that assumed duty have not been overcome by DOTD's evidence in *749 support of its motion for summary judgment, which merely shows that the Harp Street crossing was an "off-system" crossing. This conclusion further makes the trial court's granting of DOTD's motion improper.

DECREE
For the foregoing reasons, the judgment of the trial court striking the letter written to Mayor Lytle by Defendant, the State of Louisiana through the Department of Transportation and Development and Mayor Lytle's response is hereby reversed. Further, the judgment of the trial court granting summary judgment in favor of Defendant and dismissing the suit of Plaintiffs, James W. Long, individually and on behalf of his minor son, Christopher W. Long, and Jamie Long Coley, is hereby reversed. The suit, therefore, is remanded for further proceedings in accordance with this judgment.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, STEWART, CARAWAY and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] Since the letters were written to or by the DOTD and in the possession of Mayor Lytle, we also question whether or not these documents were "compiled or collected" as required by the statute. The principle behind § 409 is to prevent a party from using information which the state has expended time, effort and money to gather to determine the necessity of given improvements, to be used against it. These letters do not contain such information.